**VANDERMARK, Virginia M. and Handy, Barbara, on behalf of themselves and all others similarly situated, Appellants,**

**v.**

**HOUSING AUTHORITY OF the CITY OF YORK, Miller, Marion L., in her capacity as Executive Director of the Housing Authority of the City of York, and the Department of Housing and Urban Development of the United States of America.**

**No. 81–1327.**

United States Court of Appeals, Third Circuit.

Argued Sept. 15, 1981.

Decided Oct. 23, 1981.

Stephen D. Converse (argued), Daniel Fennick, G. David Pauline, Central Pa. Legal Services, York, Pa., for appellants.

David Schaumann (argued), Blakey, Yost, Bupp & Kilgore, York, Pa., for appellees Housing Authority of the City of York.

David Deutsch (argued), Trial Atty., Dept. of Housing and Urban Development, Washington, D. C., Carlon M. O'Malley, Jr., U.S. Atty., Barbara L. Kosik, Asst. U.S. Atty., Harrisburg, Pa., for Federal appellees.

Before: GIBBONS, HUNTER, Circuit Judges and GERRY,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This appeal raises a question under the United States Housing Act ("USHA") of 1937, as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f. The USHA provides for financial assistance from the federal government to state and local governments to remedy unsafe and unsanitary housing conditions, as well as housing shortages, of low income families. Specifically, Section 8 of the USHA, as amended, 42 U.S.C. § 1437f, authorizes the Secretary of Housing and Urban Development ("HUD") to enter into annual contribution contracts with Public Housing Agencies ("PHA") who in turn may enter into contracts to make assistance payments to owners of existing housing projects on behalf of low income tenants. The PHA issues a "Certificate of Family Participation" to eligible participants. The Certificate indicates that its holder is authorized to participate in the Section 8 Existing Housing Program ("Section 8 Program") and that the housing authority will make assistance payments to a landlord, chosen by the tenant, who agrees to participate in the Section 8 Program.

Defendant York Housing Authority ("YHA"), as one of its criteria for determining eligibility to its Section 8 Program,

---

* Honorable John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

adopted a policy of denying participation in the program to individuals who owe debts to the YHA arising out of their prior occupancy in YHA projects (the "indebtedness policy"). Plaintiffs Virginia M. Vandermark and Barbara Handy challenge YHA's indebtedness policy as inconsistent with the USHA and federal regulations, as not in compliance with the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.* (1976), and as violative of their constitutional rights under the equal protection and due process clauses of the fourteenth amendment. The district court rejected all of plaintiffs' challenges to YHA's policy. We affirm.

## FACTS

Pursuant to its authority under the USHA, HUD has promulgated regulations governing the administration and operation of the Section 8 Program at 24 C.F.R. § 882.101 *et seq.* (1981). Under the program, as it relates to existing housing, HUD enters into "annual contributions contracts" with PHAs, such as defendant Housing Authority of the City of York, which administer and operate the program at the local level. Every application submitted to HUD by a PHA must be accompanied by an administrative plan. Pursuant to 24 C.F.R. § 882.204(b)(3)(i) (1981), the administrative plan shall include:

> a statement of the PHA's overall approach and objectives in administering the Existing Housing program; a description of the procedures to be used in carrying out each function; and a statement of the number of employees proposed for the program, by position and function to be performed.

Sub-section (b)(3)(i) lists the functions that should be addressed in the administrative plan, which include outreach to eligible families, determination of family eligibility, and selection of families.

Under HUD regulations, two criteria, *inter alia*, must be met for an applicant to be considered eligible for assistance under the program: first, the applicant must qualify as a family, 24 C.F.R. § 812.1, *et seq.* (1981),

and second, the applicant must have an annual income that falls within the designated income limits for the area. 24 C.F.R. § 889.101 *et seq.* (1981). Under the regulations a PHA may establish additional criteria for determining applicant eligibility for participation in the program subject to the provision that the criteria be reasonably related to program objectives and receive approval of HUD as part of the PHA's administrative plan. 24 C.F.R. § 882.-209(a)(3) (1981).

Defendant YHA, as one of its criteria for determining eligibility for Section 8 housing, adopted a policy of denying participation in the Section 8 Program to individuals who owe debts to the YHA arising out of their prior occupancy in YHA projects. The relevant portion of this policy statement, which is embodied in section II, Paragraph A-4 of the statement, states: "Applicants who are former tenants of the Housing Authority and have vacated owing the Authority monies will not be considered eligible for participation until such monies are paid in full." Appendix at 67. This statement of policy was part of the YHA's administrative plan submitted to and approved by HUD and was in effect at the times in question.

When the PHA determines that an applicant is eligible to participate in the Section 8 Program, it issues a Certificate of Family Participation. In this case, plaintiff Vandermark applied for a certificate of family participation in the Section 8 Program administered locally by defendant YHA in September, 1977. Her application was reviewed by the YHA and her name was placed on the waiting list in December, 1977. On January 3, 1978 Vandermark's application for a certificate of family participation was approved. She was notified to appear on January 12, 1979 for an enrollment interview. On January 5, 1979, she was advised that her application was being withdrawn because of an alleged debt of $194.30 owed to the YHA arising out of the occupancy of a YHA owned public housing unit in 1975. Appendix at 6, 32.

Plaintiff Handy applied to the Section 8 Program on December 22, 1978. Her name was placed on the waiting list at that time, but was withdrawn 14 days later when she was notified by letter that a debt she owed to the YHA prevented her application from being processed. Appendix at 7, 33. Handy was later informed that her application would remain on pending status until the alleged debt to the YHA was paid. Appendix at 33.

## PROCEDURAL HISTORY

Plaintiffs filed their complaint on August 21, 1979 in the United States District Court for the Middle District of Pennsylvania seeking declaratory and injunctive relief against defendants. The complaint alleged that the defendants acted illegally in excluding plaintiffs from the Section 8 Housing Program.

Defendant HUD filed its Motion for Summary Judgment on February 4, 1980. Plaintiffs filed their Cross-Motion for Summary Judgment on February 26, 1980. The district court entered an Order and Memorandum Opinion on June 23, 1980, 492 F.Supp. 359, granting Partial Summary Judgment to defendants and reserving ruling on one remaining issue.[1] Upon renewed Motions for Summary Judgment filed by plaintiffs and defendants, the court entered Final Summary Judgment in favor of defendants on the remaining issue on December 8, 1980. 502 F.Supp. 574. Plaintiffs filed their Notice of Appeal on February 4, 1981.

## DISCUSSION

The plaintiffs have challenged YHA's indebtedness policy on four grounds: (1) as being inconsistent with the organic statute (USHA) and with federal regulations; (2) as constituting "rulemaking" by HUD and therefore subject to the notice and comment procedures mandated by the APA; (3) as violative of plaintiffs' right to equal protection under the fourteenth amendment;

and (4) as violative of the plaintiffs' due process rights under the fourteenth amendment. We agree with the district court that all of plaintiffs' challenges are without merit.

### The USHA and the Federal Regulations

The USHA was enacted for the purpose of assisting political subdivisions in providing decent, safe, and sanitary housing for low-income people. 42 U.S.C. § 1437 (1976). In order to effect this stated purpose, Congress has specifically recognized the need to vest local PHAs with the greatest amount of power and responsibility possible in order to manage USHA programs efficiently. This was expressly stated at 42 U.S.C. § 1437, under the section captioned "Declaration of Policy," which states in pertinent part:

> It is the policy of the United States . . . to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs.

In accord with this policy declaration, HUD, through its regulations, vested in the local housing authorities the right to make reasonable policy decisions not specifically authorized in the USHA. Most significantly, 24 C.F.R. § 882.209(f) (1981) provides:

> If an applicant is determined by the PHA to be ineligible on the basis of income or family composition, *or for any other reason*, the PHA shall promptly notify the applicant . . . .

(Emphasis added.) We agree with defendants that this provision clearly indicates that income and family composition are not necessarily the exclusive criteria to be used in determining eligibility for Section 8 housing. This regulation is explicit. Further, 24 C.F.R. § 882.204(b)(1)(i)(c) (1981) provides that an equal opportunity housing plan shall describe the PHA's policies and procedures for: "Selecting among eligible applicants those to receive Certificates of Family Participation including *any provisions establishing local requirements for eli-*

---

1. The district court in its first order reserved judgment on the plaintiffs' claim that they were denied due process because the record before the court at that time was unclear as to whether the hearing afforded the plaintiffs had complied with due process requirements.

*gibility* or preferences for selection in accordance with § 882.209(a)(3)." (Emphasis added.)

YHA's indebtedness policy is also consistent with the USHA's directive that local authorities develop sound and efficient management programs and practices to assure rental collection. The USHA states in pertinent part:

> Every contract for annual contributions shall provide that . . . the public housing agency shall comply with such procedures and requirements as the Secretary may prescribe to assure that sound management practices will be followed in the operation of the project, *including requirements pertaining to . . . the establishment of satisfactory procedures designed to assure the prompt payment and collection of rents* and the prompt processing of evictions in the case of nonpayment of rent. . . .

42 U.S.C. § 1437d(c)(4)(B) (emphasis added). This policy of sound fiscal management is further enunciated in 24 C.F.R. § 882.209(e)(1) (1981), which provides:

> (1) If an assisted Family notifies the PHA that it wishes to obtain another Certificate of Family Participation for the purpose of finding another dwelling unit within the area in which the PHA has determined that it is able to enter into Contracts or that it has found another such unit to which it wishes to move, the PHA shall . . . issue another Certificate . . . *unless* the PHA determines that the Owner is entitled to payment pursuant to § 882.112 on account of nonpayment of rent or other amount owed under the Lease and that the Family has failed to satisfy any such liability.

(Emphasis added.) Under 24 C.F.R. § 882.-112 (1981) the PHA is responsible to the landlord to pay any unpaid rents and other unpaid liabilities under the lease. The PHA has a clear fiscal and management interest in making certain that debts owed to it by Section 8 applicants are first paid.

For the foregoing reasons, we agree with the district court that YHA's policy requiring Section 8 Program applicants first to pay their past debts owed to YHA is consistent with the cited regulations and is in harmony with the overall policies of the Section 8 Housing Program.[2]

*The Administrative Procedure Act*

Plaintiffs also argue that HUD's approval of YHA's statement of policies, which contained the "indebtedness" eligibility requirement, constituted rulemaking by HUD without complying with the notice and comment provisions of the APA. Consequently, plaintiffs allege that the indebtedness eligibility requirement is without the force and effect of law.

The APA provisions were designed to "assure fairness and mature consideration of rules of general application." *N.L.R.B. v. Wyman-Gordon Company*, 394 U.S. 759, 764, 89 S.Ct. 1426, 1428, 22 L.Ed.2d 709 (1969). Administrative rules do not have the force of law if the procedures explicated in the APA are not followed when an agency exercises its legislative function. We have defined "rulemaking" by an agency as "the promulgation of concrete proposals, declaring generally applicable policies binding upon the affected public generally, but not adjudicating rights and obligations of the parties before it." *PBW Stock Exchange, Inc. v. Securities and Exchange Commission*, 485 F.2d 718, 732 (3d Cir. 1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1992, 40 L.Ed.2d 558 (1974). The question,

---

**2.** We agree with defendants that *Baker, et al v. Cincinnati Metropolitan Housing Authority*, 490 F.Supp. 520 (S.D. Ohio 1980) is on point and is apposite. That case concerned the identical policy, promulgated by the Cincinnati Housing Authority, of accepting Section 8 applications from past residents who had rental arrearages, but not certifying those residents for participation until the balance had been satisfied. The court upheld this policy against similar charges that it was violative of the statute, the regulations, and the Constitution. The decision in *Ferguson v. Metro Development and Housing Authority*, 485 F.Supp. 517 (M.D. Tenn. 1980), cited by plaintiffs, is not on point. In *Ferguson*, a similar policy was under review; but the tenant had already been admitted to the Section 8 Program when it was discovered that arrearages were owed. The PHA then immediately evicted the tenant without a hearing. There is no such problem in this case.

then, is whether or not the approval of the policy under review by HUD constitutes rulemaking.

■ YHA's indebtedness policy was part of a policy statement submitted by the YHA as part of its administrative plan which was approved by HUD. HUD, in approving the plan, granted the PHA authority to enforce this policy. However, the approval of the YHA's policy did not establish a general policy which would bind all housing authorities and all tenants. HUD's approval constituted a simple determination that the administrative plan was in conformance with federal regulations. As has been noted, the approval of an administrative plan is not a general statement of policy, but rather an evaluation of the merits of a single application. When YHA's administrative plan was approved by HUD, HUD was not mandating that every housing authority adopt this policy. The indebtedness policy is not, therefore, a policy of HUD but is rather a policy of the local housing authority.

As was noted in the district court opinion (Appendix at 96), there is a superficial appeal to plaintiffs' argument that the fact that HUD has delegated the authority to create certain eligibility and preference requirements to the PHA's, subject to subsequent HUD approval, is in reality nothing more than a ploy to circumvent the APA notice and comment requirements regarding rulemaking.[3] However, as was noted earlier, the policy behind low-income housing *is* to delegate the maximum amount of authority to the local housing authorities. To effectuate that purpose, HUD made provisions for implementation of local requirements in determining eligibility and preferences. *See* 24 C.F.R. §§ 882.204(b)(1)(i)(C) and 882.209(a)(3) (1981). The court below stated:

> Taken in this context, HUD's delegation to the PHA's of establishing local eligibility and preferences requirements is mandated so as to effectuate the underlying policy. HUD's review of the application to ensure conformity with its rules as well as the provisions establishing local requirements does not constitute rulemaking, but is merely implementing provisions previously and legitimately imposed by the local PHA's pursuant to HUD's rules that were unquestionably formulated in compliance with the APA. Hence, HUD's review of YHA's "indebtedness" requirement regarding eligibility was not rulemaking; therefore, compliance with the APA's notice and hearing requirements is not mandated.

Appendix at 96–97. We agree with the district court's analysis.

*Equal Protection*

Plaintiffs also argue that the YHA's indebtedness policy is an arbitrary exclusion in violation of their right to equal protection under the fourteenth amendment to the United States Constitution. The YHA has made a distinction between past tenants of the Authority who owe rent and to all other persons who are otherwise qualified for Section 8 housing.

---

**3.** Plaintiffs claim that their position that HUD has in reality engaged in rulemaking is further supported by the fact that HUD's Section 8 Handbook, distributed nationally, contains a clause which incorporates the indebtedness policy. Thus, the argument goes, HUD's contention that the indebtedness policy is a "local" policy is incorrect. The language incorporated into the Handbook reads:

> PHA's *may* defer the issuance of a Certificate to an applicant who owes back rent or other charges to the PHA as a former tenant of public housing.

HUD transmittal No. 7420.7 "Public Housing Administrative Practice Handbook for the Section 8 Existing Housing Program", Chapter 4, Section 4.4, p. 11. Appendix at 74. However, we find HUD's response to the point persuasive (Appellee's Brief at 20–21). First, the Section 8 Handbook was not in existence at the time HUD reviewed and ultimately approved the YHA plan. Second, the Handbook is an operations guide interpreting HUD's regulations. It is not a regulation and does not have the same force as a regulation. Third, the language of the Handbook in any event does not purport to be directive. The use of the word "may" denotes discretion on the part of the local authority. Plaintiffs in oral argument cited *Hess v. Ward*, 497 F.Supp. 786 (E.D. Pa. 1980) as controlling. *Hess* does establish the general proposition that "[l]ocal authorities are required to follow the policies set forth in the [HUD] Handbook." 497 F.Supp. at 798. However, this general point does not detract from the persuasiveness of the above analysis.

The parties agree that the test in this case is whether there is a rational basis for different treatment between individuals or groups within classifications. The court must determine whether the YHA's policy "rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination." *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). We find the lower court's explication of the governmental interest involved in this case succinct and persuasive:

> that interest being to foster fiscal responsibility in the administration of the Section 8 Existing Housing Programs, to ensure to landlords and the public the intent to administer a sound program, and to maintain a viable program providing maximum assistance to the largest amount of people.

Appendix at 97. The district court in *Baker, et al v. Cincinnati Metropolitan Housing Authority*, 490 F.Supp. 520 (S.D. Ohio 1980) [4] rejected the equal protection clause claim on similar grounds. [5]

*Due Process*

In its first order the district court denied, without prejudice, defendant's motion for summary judgment with respect to plaintiff's charge of due process violations under the fourteenth amendment because the record then before the district court was unclear as to the effectiveness and nature of the hearings afforded the plaintiffs. Defendants then filed a new motion to dismiss or alternatively for summary judgment, with affidavits to support their position that procedural due process was not met.

The district court subsequently found that the plaintiffs were given the opportunity to review the project office file and raise any and all issues they deemed relevant at the hearing. Appendix at 101. The court also found that the procedures followed in the hearings afforded the plaintiffs the opportunity to explain their reasons for not paying the rent or to show that conditions had changed so that they could or would have been able to pay the rent in the future. We agree with the district court that the hearings afforded plaintiffs comported with due process requirements. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

CONCLUSION

The decision of the district court is therefore affirmed.

GIBBONS, Circuit Judge, dissenting:

The plaintiffs challenge a provision of the Administrative Plan of the Housing Authority of the City of York for the program it administers under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f, which denies participation in the program to persons who owe debts to the Authority arising out of prior occupancy in

---

4. Discussed at n.2 *supra*.

5. The court explained:
   The bases for excluding past CMHA residents with a rent arrearage from the Section program are at least two fold: (1) to encourage assisted families to meet lawful obligations for rental payments; and (2) thereby maximize effective use of available federal financial assistance to meet national housing goals. This policy is consistent with the underlying objectives of 24 C.F.R. § 882.-209(c)(1)
   The interest in maximizing effective use of federal funds would not be served by excluding from Section 8 participation those who have lived in purely private homes and left money owing. As far as those who lived in other federal housing projects—including other conventional public housing—and left arrearages, they may not be readily discerni-

ble by CMHA. Hence, there is a rational basis for distinguishing between these classifications of persons who are eligible for Section 8 housing and the classification under consideration including persons who are not eligible.
   Although the classifications may not admit to "mathematical nicety" (*Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)), it cannot be said that the classifications are "clearly wrong, a display of arbitrary power, not an exercise of judgment." *Mathews v. de Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976). The rational basis requirement therefore has been met and no violation of the Equal Protection Clause is present.
   490 F.Supp. at 529.

its own projects. Unlike the provisions of the law governing publicly owned housing, Section 8 provides for subsidizing, with federal funds, rentals by private sector owners. The plaintiffs contend that the Authority's policy advances none of the policies of Section 8, and thus is inconsistent with federal law. The majority opinion rejects this contention, relying on 42 U.S.C. § 1437, which vests in local agencies the maximum amount of responsibility on the administration of their housing programs, and on 24 C.F.R. § 882.209(f) (1981), which authorizes local agencies to determine eligibility "for any . . . reason." Those provisions, however, cannot reasonably be construed to permit a local housing authority to adopt participant selection criteria totally unrelated to the purposes of the Section 8 program. The criterion which the Housing Authority of the City of York has selected is just that.

It is clear that the policy has nothing to do with the likely performance of the tenant as a rent payer in the private housing market. The prospective tenant can have a history of perpetual delinquency on rent and on every other obligation, and still become eligible by paying off a single creditor, the Authority. A tenant in privately owned substandard housing may owe his landlord thousands of dollars and remain eligible. Indeed Chapter 4 ¶(3) of the Handbook for the Section 8 Existing Housing Program provides that "PHAs must not establish selection criteria based on the applicant's expected behavior as a tenant." The creditworthiness of the tenant is a matter solely for the judgment of the private sector owner. 42 U.S.C. § 1437f(d)(1)(A). Thus the challenged policy cannot be justified as a predictor of good tenant behavior. It is purely and simply a collection device, favoring a single creditor. There is nothing in Section 8 or its legislative history suggesting that debt collection was one of the purposes Congress had in mind. The authority's policy is no more rationally related to the purposes of Section 8 than would be a policy requiring applicants to pay off delinquent retail installment debts, or to join the YMCA. I agree with Judge Wiseman:

> Defendants' policy of excluding persons alleged to have prior debts to MDHA

from the Section 8 program[8] in effect constitutes an unauthorized collection practice, precluding from the program people who have had trouble paying rent, who are the very persons whom the Section 8 program was intended to help. By so doing, the defendants' policy violates the stated purpose of the statutes, regulations, and legislative history creating the program.

---

[8]. The present policy is stated as:

"Former tenants who owe the MDHA a balance from a prior occupancy will not be considered for admission until the account is paid in full. . . ." . . .

*Ferguson v. Metropolitan Development and Housing Agency*, 485 F.Supp. 517, 524 (M.D. Tenn. 1980). The appellants make the point that because of the attractive features of the limited Section 8 program the Authority's policy is a potent collection weapon, permitting it to coerce both payments of disputed amounts and payments in preference to other creditors. Congress never intended that the Section 8 program be used for such a purpose. I would reverse.