**Donna BAKER, Jean Nelson, Kathleen Pickens, Victoria Banks, individually/on behalf of persons similarly situated, Plaintiffs-Appellants,**

v.

**CINCINNATI METROPOLITAN HOUSING AUTHORITY, and Henry R. Stefanik, Defendants-Appellees.**

**No. 80–3441.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 23, 1981.

Decided April 20, 1982.

---

John E. Schrider, Legal Aid Society of Cincinnati, Cincinnati, Ohio, for plaintiffs-appellants.

Booth Shepard, Richard S. Rust, IV, Cincinnati, Ohio, for defendants-appellees.

Before LIVELY and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.
This appeal involves the government program established by Section 8 of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f *et seq.* The Section 8 program provides housing assistance to low income families. More specifically, it is a rent subsidy plan under which owners of existing private housing receive

payments on behalf of low income tenants. The funds, although released by the Department of Housing and Urban Development (HUD), are disbursed by local public housing authorities. Defendants-appellees are the Cincinnati Metropolitan Housing Authority (CMHA) and its executive director. Appellants are a class of former and present residents of the housing authority who claim that they have been wrongfully excluded from participation in the Section 8 program. In order to understand the issues raised, a brief discussion of the Section 8 program is necessary.

Local public housing authorities enter the program by executing an annual contributions contract with HUD. This contract authorizes the local agencies to enter into leases with participating owners. As part of its application to HUD, the local agency must file an administrative plan which specifies the criteria by which it will determine family eligibility and assistance priority. 24 C.F.R. § 882.204(b)(3)(i) (1981). The only requirements mandated by HUD pertain to family status and income limitations. 24 C.F.R. § 812.1 et seq. and § 889.-101 et seq. (1981). Otherwise local agencies are free to adopt additional criteria, subject only to the provision that they be reasonably related to the program's objectives and be approved by HUD as part of the agency's administrative plan. 24 C.F.R. § 882.-209(a)(3) (1981). Persons seeking assistance must apply to a local authority for a Certificate of Family Participation. Once certified, families may be placed on a waiting list until the agency can find a unit for them; alternatively, families may locate an apartment on their own and begin to receive benefits once a lease is approved and signed.

The two Cincinnati Metropolitan Housing Authority policies at issue are: (a) the ranking of current residents of CMHA publicly owned and operated housing behind all other applicants for Section 8 private housing benefits, and (b) the refusal to process the Section 8 applications of former CMHA residents who left the authority in arrears and have not yet satisfied their debt.

As part of its application for an annual contributions contract, CMHA submitted to HUD an administrative plan which contained the following order of preference for persons already holding Certificates of Family Participation:

### Order of Preference

1. Displaced families of disabled veterans or servicemen;
2. Displaced families of deceased veterans or servicemen;
3. Displaced families of families of veterans or servicemen;
4. Displaced families;
5. Families of Disabled Veterans or servicemen;
6. Families of Deceased Veterans or Servicemen;
7. Families of Veterans or servicemen;
8. *Present residents of CMHA developments;*
9. All other families not included in groups 1 through 7 above.

The plan also established certain constraints to govern the issuance of Section 8 Certificates. An addendum to the plan provided:

13. Lowest priority shall be given to persons now residing in any owned and/or operated developments of Cincinnati Metropolitan Housing Authority.

14. No other preference or priorities will be used.

Although the preceding "Order of Preference" appears to give rather high priority to present residents, the constraints section effectively abrogates any favorable treatment that ranking might otherwise afford them. This is the result of a HUD regulation which states that local housing authorities are not to issue more Certificates of Family Participation than they can honor. 24 C.F.R. § 882.209(a)(5) (1981). Because demand for housing assistance from nonresident applicants alone invariably exceeds CMHA's Section 8 resources, present residents, who, according to the constraints policy, stand last in line for certificates, are

never reached. Thus, present residents are effectively locked out of the Section 8 program.

The arrearage policy, which excludes from the Section 8 program all former CMHA residents who left owing rent to the authority, is not written into the CMHA administrative plan approved by HUD. Instead the practice evolved within the authority itself. The policy, however, is one which HUD recommends in a handbook distributed to local authorities. In addition, it was in this instance approved by HUD in a letter to CMHA. Furthermore, the policy operates according to specific guidelines. Those excluded are given notice of the debt and an opportunity to contest it at an informal hearing.

Appellants, past and current residents of CMHA housing excluded from the Section 8 program by these two policies, filed a class action suit against the authority under 42 U.S.C. § 1981 seeking declaratory and injunctive relief as well as attorney's fees. They complained that the aforementioned practices violated the Housing and Community Development Act, *supra*, federal regulations, and the equal protection and due process clauses of the Fourteenth Amendment to the Constitution. The District Court disagreed and granted defendant's motion for summary judgment. It also denied plaintiff's similar motion with limited exceptions pertaining to the structure of the arrearage policy's notice and hearing procedures. 490 F.Supp. 520.

The current residents offer three arguments in support of their contention that CMHA's policy of excluding them from the Section 8 program is unlawful. First, they claim that the policy violates CMHA's own administrative plan and the federal regulations governing the content of such plans. Second, they contend that the policy acts as a conclusive presumption and so denies them their constitutional right to due process of law. Finally, they argue, the policy establishes a discriminatory classification scheme in contravention of the Fourteenth Amendment's equal protection clause. We will address these arguments in order.

The claim that the policy violates the administrative plan focuses on the order of preference which gives current residents priority over all other families except the rather narrow group listed above them in numbers 1–8. However, plaintiffs ignore the fact that this scheme applies only to families *already holding* Section 8 certificates. Hence, the ranking which operates to deny current residents is not the order of preference but is instead the portion of CMHA's administrative plan which defines the constraints to be applied to the *issuance* of Section 8 certificates. That section relegates current residents to the lowest priority. Therefore CMHA is following its own administrative plan when it denies Section 8 benefits to current CMHA residents. Although there is some dispute as to whether the constraint ranking current residents last was properly appended to CMHA's original plan, we find adequate evidence in the record to support the lower court's determination that it was.

Moreover, we do not believe that this policy violates the federal statute or the regulations. Both provide for the exercise of local discretion in the process of determining family eligibility. As we noted earlier, HUD requires only two criteria: family status and low income. Under the regulations, local housing authorities may establish additional criteria subject only to the provision that the criteria be reasonably related to program objectives and receive HUD approval. 24 C.F.R. § 882.209(a)(3) (1981). Approval of the low priority given to current residents was tacit in HUD's acceptance of the Cincinnati plan. Furthermore, HUD's Regional Office specifically recommended this policy in a letter to CMHA.

Similarly, the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.*, of which the Section 8 program is a part, encourages local decision-making: "It is the policy of the United States . . . to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs." 42 U.S.C. § 1437. Therefore, we find no impediment to

CMHA's exercise of this type of authority in either the federal statute or regulations. The rule excluding present residents was approved by HUD; a federal agency's interpretation of its own governing regulations is entitled to deference. *Detroit Edison Co. v. U. S. Environmental Protection Agency,* 496 F.2d 244, 248 (6th Cir. 1974).

█ With respect to the constitutional questions, we find no merit in either of appellants' arguments. They insist that ranking present residents beneath all other applicants creates a conclusive presumption which violates their right to due process under the Fourteenth Amendment. According to appellants, this rule presumes that present residents are better housed than nonresident applicants. This, they contend, is not always true. Instead, they argue that current residents of CMHA housing are often more poorly housed than nonresident Section 8 applicants. Appellants claim that the presumption inherent in the rule locks them out of the Section 8 program on the basis of a proposition which is not "necessarily or universally true" and thereby violates their right to due process of law. *Vlandis v. Kline,* 412 U.S. 441, 452, 93 S.Ct. 2230, 2236, 37 L.Ed.2d 63 (1973); *see also Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

This analysis must fail. Appellants have misstated the presumption in order to serve their argument. The Section 8 program seeks to provide housing assistance to the maximum possible number of persons who lack safe, sanitary, and decent housing. 42 U.S.C. § 1437. Current residents of CMHA developments are housed under programs designed to deliver exactly that standard of housing. *Id.* If in fact the quality is substandard, residents may file grievances to force CMHA to meet its obligations. 24 C.F.R. § 886.1 *et seq.* (1981). No such duties or safeguards exist for the benefit of those outside CMHA programs. This is the distinction which underlies the policy excluding CMHA residents from the Section 8 program. Appellees have presumed that current residents either have quality hous-

ing or the right to demand it. The same may not be said of those outside CMHA's jurisdiction. This presumption, the validity of which is not disputed, may be employed by CMHA in its family selection process without violating the due process rights of those excluded by it.

█ Finally, appellants challenge the priority scheme as a classification system which violates their Fourteenth Amendment right to equal protection under the law. However, they concede that the scheme may survive if it has some rational basis in fact. *See Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). We find that it does have such a basis and therefore uphold its use.

Absent the challenged priority, current residents would be allowed to move out of CMHA developments and into private Section 8 housing on the same basis as nonresidents. The resulting increase in turnover in CMHA housing would shorten the average length of residency and decrease the percent of housing capacity utilized. Those receiving public housing assistance would be granted the freedom to choose among the various government programs. Were resources plentiful or the need for assistance low, the advantage of letting each family select the program most suited to its needs would be a worthy goal. Until that day, however, the incremental costs associated with alternative policies must be carefully weighed. Appellees have chosen to restrict appellants to the housing program currently assisting them in order to maximize the overall number of persons who receive aid. It is undisputed that the demand for housing assistance exceeds supply in the Cincinnati metropolitan area. Increased turnover in CMHA housing means that individual units will be vacant more often. While those apartments are empty, others in need will be denied assistance because the Section 8 apartment will go to a CMHA resident who has elected to change programs. Such a policy would increase costs while reducing capacity. In their brief, appellants underscore the need to evaluate government housing programs as a whole.

Yet viewing the relief they seek in terms of its effect upon a single integrated housing system highlights the inefficiency that relief would impose. We find that appellees' policy of ranking present CMHA residents last in line for Section 8 certificates is a rational one in light of the purposes and objectives of the Section 8 housing assistance program. Accordingly, we decline to disturb it. *Weinberger v. Salfi, supra.*

█ The appellants who were denied benefits because of the arrearage policy claim that this policy violates CMHA's administrative plan, the federal statute and regulations, and the equal protection clause of the Constitution. These exact claims against an identical arrearage policy were recently decided by the Third Circuit in *Vandermark v. Housing Authority of the City of York*, 663 F.2d 436 (1981). The court there rejected each of these claims and upheld the policy. In reviewing the statute and regulations the court concluded that they did not prevent the exercise of this type of local decision-making. *Id.* at 439–40. Second, the policy was upheld on equal protection grounds. The Court found that the arrearage policy had a rational basis in fact because it promoted fiscal responsibility. *Id.* at 442. Finally, the court found that the due process rights of residents excluded by policy were adequately protected by the notice and hearing provisions of that policy. *Id.* The only factual distinction between *Vandermark* and the present case is that here, unlike the York Public Housing Authority, CMHA did not include the arrearage policy in its administrative plan. We cannot see that this distinction suggests a different result.

The omission of an eligibility criterion from the administrative plan poses two distinct but related threats to the integrity of the program. First, HUD might not have notice of an important eligibility factor in a program it finances. This is not the case here, however, because HUD recommended and specifically approved this particular arrearage policy. The second potential danger stems from the increased discretion such an omission might permit within the

selection process. Appellants' effort to raise the spectre of CMHA applying this policy in an ad hoc manner overstates the case, for the arrearage policy, although not included in the administrative plan, in fact establishes a fixed and certain rule which must be applied according to a specific procedure. As modified by the court below, the policy may be given effect only after fair notice and opportunity for a hearing before a review board. In any event, there are other instances where a family may be denied Section 8 benefits even though the excluding policy is not written into the administrative plan itself. For example, the following regulation, which is substantively quite similar to the CMHA arrearage policy, prevents those in arrears from obtaining a second Certificate of Family Participation and does so whether included in the administrative plan or not.

If an *assisted* family notifies the PHA that it wishes to obtain *another* Certificate of Family Participation for the purpose of finding another dwelling unit within the area in which the PHA has determined that it is able to enter into contracts or that it has found another such unit to which it wishes to move, the PHA shall ... issue *another* Certificate or process a Request for Lease Approval, as the case may be, *unless the PHA determines that the owner is entitled to payment pursuant to Section 882.112 on account of nonpayment of rent or other amount owed under such Lease and that the family has failed to satisfy any such liability.* (emphasis added)

24 C.F.R. § 882.204(3) (1981).

Thus, because the arrearage policy operates pursuant to fixed rules which provide adequate procedural safeguards, there is no danger of arbitrary application. Appellants have not alleged discrimination in the implementation of this policy, and there is no evidence to that effect in the record. We therefore affirm the District Court's approval of the arrearage policy.

The final issue concerns the question of attorney fees. In a Section 1983 suit of this nature, that issue is controlled by 42 U.S.C. § 1988, which provides in part:

In any action or proceeding to enforce a provision of [§ 1983 and other statutes] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

*Id.*

Inasmuch as we have affirmed the very narrow relief granted below, consisting of changes in the notice and hearing provisions of the arrearage policy, we decline to upset the District Court's exercise of discretion in refusing to award attorney's fees.

Judgment affirmed.