Mary BAKOS, Plaintiff-Appellant,

v.

FLINT HOUSING COMMISSION,
Defendant-Appellee.

No. 83–1491.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 2, 1984.

Decided Oct. 29, 1984.

A. Lee Kirk (argued), Legal Services of Eastern Mich., Flint, Mich., for plaintiff-appellant.

Richard J. Figura (argued), Flint, Mich., for defendant-appellee.

Before MARTIN and CONTIE, Circuit Judges, and DOWD, District Judge.*

CONTIE, Circuit Judge.

Plaintiff Mary Bakos appeals from a judgment on the pleadings in favor of defendant Flint Housing Commission (FHC). This case arises under Section 8 of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974. The district court held that a recipient of Section 8 benefits who wishes to move from one subsidized tenancy to another in the same area may be denied a Certificate of Family Participation by a local public housing agency if the recipient owes the agency back rent in connection with a previous non-Section 8 tenancy. We reverse the judgment of the district court and distinguish our prior decision in *Baker v. Cincinnati Metropolitan Housing Authority*, 675 F.2d 836 (6th Cir. 1982).

I.

FHC is a public housing agency (PHA) within the meaning of the Act. In 1976, plaintiff Bakos and her three sons were living in FHC public housing that was not subsidized under the Section 8 program. FHC served a termination notice upon the plaintiff in June 1976. When Bakos and her sons vacated the premises on August 5, the family was $529.00 in arrears on the

* The Honorable David D. Dowd, Jr., Judge, United States District Court for the Northern District of Ohio, sitting by designation.

rent. FHC has since written off this amount as a bad debt.

The plaintiff applied for Section 8 benefits in March 1980. FHC approved the application and granted Bakos a Certificate of Family Participation. The plaintiff then found an owner, Piper Realty, that was willing to rent to the family under the Section 8 program. After FHC inspected the unit, Bakos, Piper Realty and FHC executed appropriate documents establishing a one-year lease to begin April 9, 1980. Bakos promised to pay a percentage of the rent; FHC promised to pay the remainder from federal funds supplied by the Department of Housing and Urban Development (HUD). In addition, FHC promised to pay eighty percent of any valid vacancy loss claim filed by Piper Realty should the Bakos family vacate the premises in violation of the lease. The latter promise was limited to a period not exceeding one month beyond the month during which the vacancy occurred.

In October 1980, Piper Realty served upon Bakos a seven-day notice to quit for reasons other than non-payment of rent. The ensuing state court litigation eventually was settled. A consent order was entered under which Piper Realty would take possession of the unit on February 1, 1981 and under which Bakos would pay the rent until that date.[1]

Bakos subsequently requested another Certificate of Family Participation so that she and her family could continue to receive Section 8 benefits at another location in the area served by FHC. FHC refused to grant the Certificate on the grounds that the plaintiff still owed $529.00 in connection with the 1976 non-Section 8 tenancy

and because Piper Realty intended to file a vacancy loss claim. On April 27, 1981, FHC paid Piper Realty's claim in the amount of $332.00.

After a hearing concerning the denial of the second Certificate of Family Participation, the hearing officer determined that while the Certificate could not be denied because of the vacancy loss claim,[2] the Certificate could be denied because of the $529.00 arrearage. The hearing officer relied upon § 4–4(c)(4) of the HUD Handbook. The district court upheld the hearing officer's decision.

## II.

■ As was indicated in *Baker*, 675 F.2d at 840, the Section 8 program is designed to provide safe, sanitary and decent housing to low income families. Pursuant to annual contribution contracts, HUD disburses funds to local public housing authorities like FHC. *Id.* at 838. The housing authorities use these funds to subsidize low income tenants who rent from private owners.

A prospective tenant desiring to receive Section 8 benefits must apply for a Certificate of Family Participation. *Id.* The applicant must have family status, *see* 24 C.F.R. § 812.1 *et seq.*, and must have limited income, *see* 24 C.F.R. § 889.101 *et seq.* In addition, the applicant must satisfy any criteria promulgated by the local PHA, provided that these additional criteria are reasonably related to the objectives of the Section 8 program and are approved by HUD. *See* 24 C.F.R. § 882.209(a)(3).[3] In *Baker*, this court upheld a local PHA practice of denying Certificates of Family Participation to new applicants for Section 8

---

1. This case does not involve an eviction. The notice to quit was deficient, for instance, because the notice did not inform the plaintiff of the family's right to respond to the owner or to FHC within ten days. *See* HUD Transmittal No. 7420.7, "Public Housing Administrative Practice Handbook for the Section 8 Existing Housing Program," Chapter 10, § 10–5(a)(2)(b) (hereafter referred to as "HUD Handbook"). The plaintiff and Piper Realty simply agreed to terminate the lease two months early.

2. This issue has not been preserved for appeal.

3. After a family obtains a Certificate of Family Participation, it must find an owner willing to rent to Section 8 tenants. After such an owner is located and the PHA inspects the premises, the owner and the family sign a lease. Finally, the owner and the PHA execute a contract under which the PHA agrees to pay a fixed percentage of the rent. *See Simmons v. Drew*, 716 F.2d 1160, 1161 (7th Cir.1983).

benefits who owe back rent in connection with previous non-Section 8 tenancies. The *Baker* opinion noted that an identical arrearage policy had been upheld in *Vandermark v. Housing Authority,* 663 F.2d 436 (3d Cir.1981).

When a family that already is participating in the Section 8 program wishes to move from one Section 8 tenancy to another, it must obtain another Certificate of Family Participation. *See* 24 C.F.R. § 882.-209(e); *see also* HUD Handbook, Chapter 9, § 9–4. The issue in this case is whether FHC, which may apply its arrearage policy to new applicants for Section 8 benefits, may apply that policy to a family already participating in the Section 8 program that seeks another Certificate of Family Participation in order to continue receiving benefits after moving to a new location in the area served by the same PHA.

The district court held that FHC could apply its arrearage policy to families like the Bakos family under § 4–4(c)(4) of Chapter 4 of the HUD Handbook. The relevant portion of this section reads:

> *PHAs may defer the issuance of a Certificate to an applicant who owes back rent or other charges to the PHA as a former tenant of public housing.* The PHA may either require the family to repay the amounts owed prior to issuing the Certificate or may condition the issuance of a Certificate on the applicant's willingness to enter into an agreement to repay after it has been enrolled in the program. [Emphasis in original.]

The court held that the language of this provision was broad enough to include any applicant for a Certificate of Family Participation, regardless of whether the applicant was seeking initial admission into the Section 8 program or merely was seeking continuing benefits after moving.

■ We hold, however, that § 4–4(c)(4) does not apply to recipients of Section 8 benefits like the plaintiff who request a Certificate of Family Participation in order to move from one Section 8 tenancy to another such tenancy within the area served by the same PHA. Chapter 4 of the

HUD Handbook governs the process of initial admission into the Section 8 program. Section 4–1 of the Chapter, for instance, states in pertinent part:

> This Chapter covers the program's occupancy requirements and covers in chronological order the various activities necessary to process family applications for assistance *from the initial interview stage to the initial execution of an Housing Assistance Payments (HAP) Contract with an owner.* [Emphasis supplied.]

The Bakos family completed all of these steps when the lease with Piper Realty was signed in the spring of 1980.

It is Chapter 9, § 9–4 of the HUD Handbook, dealing with "Requirements Applicable to Assisted Families Who Wish To Move," that applies to the plaintiff's case rather than Chapter 4. Section 9–4(c) states in pertinent part:

> *Other eligibility factors.* Section 882.-209(e) of the regulations states that the family may be determined ineligible for a desired move with continued assistance if the family owes money for unpaid rent or for other responsibilities under the lease *with their current owner,* including amounts for damages to the unit which may be in excess of the family's Security Deposit. [Second emphasis supplied.]

The italicized language suggests that a PHA may deny a Certificate of Family Participation to a family already receiving assistance if back rent is owed to the current private owner but not if back rent is owed to the PHA in connection with a prior non-Section 8 tenancy.

Section 9–4 twice refers to 24 C.F.R. § 882.209(e). The language of § 882.-209(e)(1) confirms the interpretation of § 9–4 just mentioned. The provision reads:

> *Continued Participation When Assisted Family Moves.* (1) if an assisted Family notifies the PHA that it wishes to obtain another Certificate of Family Participation for the purpose of finding another dwelling unit within the area in which the PHA has determined that it is

able to enter into Contracts or that it has found another such unit to which it wishes to move, the PHA *shall* . . . issue another Certificate or process a Request for Lease Approval, as the case may be, *unless* the PHA determines that the Owner is entitled to payment [of a vacancy loss claim] on account of non-payment of rent or other amount owed under the Lease and that the Family has failed to satisfy any such liability. [Emphasis supplied.]

Subsection (e)(1) of § 882.209 applies to the Bakos family because the family requested the second Certificate of Family Participation from FHC, the same PHA that granted the first Certificate. The use of the word "shall" in subsection (e)(1) clearly indicates that FHC had no discretion to refuse to issue the Certificate unless a specific exception was found to exist. That exception refers to back rent owed to the private owner (Piper Realty)[4] and not to back rent owned to the PHA in connection with a previous non-Section 8 tenancy. We conclude that under the plain language of § 882.209(e)(1), the plaintiff was entitled to receive the Certificate of Family Participation.

The language of § 882.209(e)(2), the paragraph immediately following subsection (e)(1), also is instructive. The provision reads in pertinent part:

If an assisted Family wishes to move out of the area in which the PHA has determined that it is able to enter into Contracts and the Family qualifies under paragraph (e)(1) of this section, the Family may obtain housing assistance in the jurisdiction to which it is moving, provided that the Family obtains a Certificate of Family Participation from the appropriate PHA. *The appropriate PHA shall treat the Family either as a Family to whom the PHA is already providing assistance who wishes to move to another unit or as a resident who has* *submitted an application for assistance.* [Emphasis supplied.]

Had the Bakos family left the area served by FHC, the new PHA could have treated it either as a family to which assistance was already being afforded or as a new applicant for assistance. Thus, subsection (e)(2) supports the distinction that the plaintiff wishes to draw between new applicants and current recipients of Section 8 benefits. Moreover, while subsection (e)(2) expressly provides a new PHA with the option to treat a family such as the Bakos family as a new applicant, subsection (e)(1) does not provide the current PHA with a similar option.[5] This difference in language demonstrates that the drafters of § 882.209(e) intended that current PHAs must treat families already receiving Section 8 benefits differently from new applicants for purposes of determining eligibility for Certificates of Family Participation.

FHC contends that under Chapter 10 of the HUD Handbook, § 10–5(c), it was required to use the rules set forth in Chapter 4 rather than those in Chapter 9 to determine whether the Bakos family was entitled to the Certificate of Family Participation. Although § 10–5(c) does incorporate § 4–4(c) by reference, Chapter 10 only governs eviction situations. As has already been indicated, *see* note 1 *supra*, this case involves not an eviction but a mutual agreement between the plaintiff and Piper Realty to terminate the tenancy two months early. Since no eviction is involved, Chapter 10 of the HUD Handbook is inapplicable.

### III.

Although the *Baker* and *Vandermark* decisions hold that a PHA may apply an arrearage policy like the one at issue here to families initially applying for Section 8 benefits, the applicable regulations and HUD Handbook provisions indicate that other rules apply to families already receiv-

---

**4.** Whether FHC could have denied the Certificate of Family Participation because of the vacancy loss claim is not at issue. *See* footnote 2, *supra*.

**5.** This distinction certainly is rational because the new PHA has never had an opportunity to evaluate the applicant.

ing assistance. The judgment of the district court is REVERSED.[6] The appellant shall recover costs on appeal.

6. In view of this holding, we do not address the plaintiff's irrebuttable presumption argument.