**Ricky FREEMAN and Brenda Faye Hunter, Plaintiffs,**

v.

**Laquita SULLIVAN, et al., Defendants.**

No. 11–2424.

United States District Court,
W.D. Tennessee,
Western Division.

June 17, 2013.

733

Ricky Freeman, West St. Paul, MN, pro se.

Brenda Faye Hunter, West St. Paul, MN, pro se.

Jimmy L. Croom, U.S. Attorney's Office, Jackson, TN, Harriett M. Halmon, David Brackstone, Asia Nicole Diggs, Ford & Harrison LLP, U.S. Attorney's Office, Memphis, TN, for Defendants.

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

SAMUEL H. MAYS, JR., District Judge.

Before the Court are the October 1, 2012 Motion to Dismiss filed by Defendants Regina Fisher ("Fisher"), Robert Lipscomb ("Lipscomb"), and LaQuita Sullivan ("Sullivan") (collectively, the "MHA Defendants"); the November 29, 2012 Motion to Dismiss filed by Defendants Lynn Grosso ("Grosso"), Gregory Bernard King ("King"), and Carlos Osegueda ("Osegueda") (collectively, the "Federal Defendants"); and the April 10, 2013 Motion to Dismiss filed by Defendant Memphis Housing Authority ("MHA"). (October 1 Motion, ECF No. 23); (November 29 Motion, ECF No. 33); (April 10 Motion, ECF No. 43-1.) Plaintiffs responded to the October 1 Motion on October 12, 2012; the November 29 Motion on December 10, 2012; and the April 10 Motion on April 19, 2013. (Resp. to Oct. 1 Motion, ECF No. 28); (Resp. to Nov. 29 Motion, ECF No. 34); (Resp. to April 10 Motion, ECF No. 44.) On April 24, 2013, the Magistrate Judge filed her Report and Recommendation on the October 1 Motion (Report 1, ECF No. 45), the November 29 Motion (Report 2, ECF No. 46), and the April 10 Motion (Report 3, ECF No. 47.) Plaintiffs Ricky Freeman ("Freeman") and Brenda Faye Hunter ("Hunter") (collectively, "Plaintiffs") objected on May 7, 2013. (Objections, ECF No. 48.)

In the Report on the October 1 Motion, the Magistrate Judge recommends dismissing Plaintiffs' claims against the MHA Defendants. In the Report on the November 29 Motion, the Magistrate Judge recommends dismissing Plaintiffs' claims against the Federal Defendants. In the Report on the April 10 Motion, the Magistrate Judge recommends dismissing Plaintiffs' claims against MHA. For the following reasons, the Court ADOPTS the Magistrate Judge's Reports on the October 1, November 29, and April 10 Motions and OVERRULES Plaintiffs' objections. The October 1, November 29, and April 10 Motions are GRANTED.

## I. Facts and Procedural Background
### A. Plaintiffs' Allegations

On May 27, 2011, Plaintiffs filed a pro se Complaint alleging housing discrimination in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq.*, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, and § 1437f of the United States Housing Act of 1937 (the "Housing Act"), as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f. (Compl., ECF No. 8.) On February 10, 2012, Plaintiffs filed a pro se Amended Complaint. (Am. Compl., ECF No. 14.)

Plaintiffs are an unmarried couple who lived in Section 8 housing in St. Paul, Minnesota, before moving to Memphis, Tennessee. When Plaintiffs moved to Memphis on August 22, 2006, they immediately scheduled a meeting with representatives of MHA to review Freeman's Section 8 portability voucher, a document that facilitates the relocation of current Section 8 renters. Before the meeting, Plaintiffs rented at the New Horizon Apartments in Memphis and paid their own expenses.

Freeman and Hunter make individual and joint allegations. Plaintiffs' joint allegations address their September 7, 2006 meeting with Sullivan and Fisher, who are employees of MHA. At the September 7 meeting, the discussion included Plaintiffs' request to cohabitate, the required paperwork for rent subsidization, and a request to install a "grab bar" in Freeman's apartment. Freeman requested a "grab bar" to accommodate his scoliosis. Lipscomb, the Executive Director of MHA, was not at the meeting.

Portions of Freeman's application for a Section 8 voucher were allegedly denied, delayed, or ignored. Plaintiffs' request to cohabitate was denied because Freeman and Hunter were not married. Plaintiffs' paperwork for rent subsidization was al-legedly delayed five months, which required them to pay temporarily inflated rent. Sullivan and Fisher allegedly took no action on Plaintiffs' request for a "grab bar." Plaintiffs also allege that, during the September 7 meeting, they were subjected to demeaning remarks and actions by Sullivan and Fisher, including remarks about Plaintiffs' relationship status.

Individually, Freeman alleges that Sullivan: (1) failed to allow Freeman to apply for housing with Hunter; (2) delayed processing Freeman's paperwork for five months; and (3) failed to approve the installation of a "grab bar" in Freeman's apartment bathroom. Freeman alleges that Fisher and Lipscomb delayed the paperwork for five months and failed to install reasonable accommodations to his apartment. Individually, Hunter alleges that Sullivan made demeaning and disparaging remarks during the September 7 meeting.

### B. The October 1 Motion

The MHA Defendants seek to dismiss Plaintiffs' claims as insufficiently pled and Hunter's claim for lack of standing. According to the MHA Defendants, Plaintiffs' claims are devoid of factual support and fail as a matter of law. The MHA Defendants also seek dismissal based on qualified immunity because Plaintiffs sued them in their official capacities. The MHA Defendants argue that Hunter lacks standing because she seeks to assert Freeman's rights under the Section 8 portability documents, and the Constitution requires litigants to suffer an injury-in-fact. On October 12, 2012, Plaintiffs filed a response, in which they reiterate the allegations in the Amended Complaint. (Pls.' Resp. to Oct. 1 Mot., ECF No. 28.)

In recommending that Plaintiffs' claims against the MHA Defendants be dismissed, the Magistrate Judge concluded

that Hunter lacked standing because she failed to allege an injury-in-fact given that the Section 8 voucher was Freeman's. (Report 110–11.) Considering the denial of Freeman's request to cohabitate, the Magistrate Judge concluded that Freeman failed to state a claim upon which relief could be granted because a public housing authority may "prohibit two adults *without children* from sharing one applicant's public housing." (*Id.* 12–13) (emphasis in original). The Magistrate Judge also concluded that Freeman's claims based on delayed paperwork and failure to install a "grab bar" were insufficiently pled. (*Id.* 13–14.) Freeman's allegations failed to establish that delayed paperwork violated his legal rights or that the MHA Defendants had the authority to install a "grab bar." (*Id.*)

### C. The November 29 Motion

The Federal Defendants, who are employees of the Department of Housing and Urban Development ("HUD"), seek dismissal based on sovereign immunity. The Federal Defendants are sued in their official capacities. They argue that, because the United States is immune to suit absent consent, and because Plaintiffs fail to allege that the United States consented, their claims are foreclosed as a matter of law.

In recommending that Plaintiffs' claims be dismissed, the Magistrate Judge concluded that sovereign immunity applied. The Magistrate Judge reasoned that, because the Amended Complaint "does not specify the legal basis for their claims against the Federal Defendants," Plaintiffs "cannot bear the burden of identifying any Congressional waiver in the statute of sovereign immunity." (Report 29.) Absent allegations of Congressional waiver, Plaintiffs' claims failed as a matter of law.

### D. The April 10 Motion

MHA seeks to dismiss Plaintiffs' Amended Complaint because Freeman's claims are insufficiently pled and because Hunter lacks standing. MHA argues that Freeman's claims are devoid of factual support and fail as a matter of law. MHA argues that Hunter lacks standing because she seeks to assert Freeman's rights under the Section 8 portability documents, and the Constitution requires litigants to suffer an injury-in-fact.

In recommending that Plaintiffs' claims be dismissed, the Magistrate Judge concluded that Hunter lacked standing. She "has not pled any injury-in-fact that she has suffered. [because] the Amended Complaint has not alleged that she has been denied any of her rights to government-subsidized housing." (Report 310.) The Magistrate Judge also concluded that the alleged humiliation suffered by Hunter was not an injury-in-fact sufficient to establish standing. (*Id.* 11.)

The Magistrate Judge recommended dismissing Freeman's claims because, although the public housing authority in Minnesota allowed Plaintiffs to cohabitate, there is no "authority that a public housing authority may not prohibit two adults *without children* from sharing one applicant's public housing." (*Id.* 12.) The Magistrate Judge recommended dismissing Freeman's claim based on delays in processing his paperwork and the failure to install a "grab bar" to accommodate his disability because they were insufficiently pled. (*Id.* 13.) Freeman's allegations failed to establish that delayed paperwork violated his legal rights or that the Federal Defendants had the authority to install a "grab bar." (*Id.*)

## II. Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plain-

tiffs raise a federal question under the FHA, 42 U.S.C. §§ 3601 *et seq.*, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, and § 1437f of the Housing Act, as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f.

## III. Standard of Review

### A. Motion to Dismiss

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 361 (6th Cir.2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) *(per curiam* ). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Id.* (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 1950.

### B. Review of the Magistrate Judge's Reports

■ Congress intended 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. *See United States v. Curtis,* 237 F.3d 598, 602 (6th Cir.2001) (citing *Gomez v. United States,* 490 U.S. 858, 869–70, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989)); *see also Baker v. Peterson,* 67 Fed.Appx. 308, 310 (6th Cir.2003). "A district judge must determine *de novo* any part of a magistrate judge's disposition that has been properly objected to." Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C). " 'Only those specific objections to the magistrate's report ... will be preserved for [ ] review.' " *Carson v. Hudson,* 421 Fed.Appx. 560, 563 (6th Cir.2011) (quoting *Souter v. Jones,* 395 F.3d 577, 585 (6th Cir.2005)); *see also Smith v. Detroit Fed'n of Teachers, Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987).

■ After reviewing the evidence, the court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The district court is not required to review-under a *de novo* or any other standard-those aspects of the report and recommendation to which no objection is made. *Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

The district court should adopt the findings and rulings of the magistrate judge to which no specific objection is filed. *Id.* at 151, 106 S.Ct. 466.

## IV. Analysis

### A. October 1 Motion

Plaintiffs objected to the Magistrate Judge's recommendations in a letter dated May 1, 2013, which was filed on May 7, 2013. Plaintiffs' letter addresses the disposition of the October 1, November 29, and April 10 Motions. Plaintiffs object to portions of the Reports that are based on evidence "stating [the] rules and regulations by the U.S. Department of Housing and Urban Development, and the incorrect rules and regulations by the Memphis Housing Authority." (Objections 2.) The Court understands Plaintiffs' objection to be an argument based on the alleged incongruence between MHA and HUD regulations. For purposes of the October 1 Motion, Plaintiffs' objection addresses the Magistrate Judge's conclusion that differences between MHA and HUD regulations do not violate Freeman's rights because MHA acted within its authority in denying a housing voucher to an unmarried couple without children.

■ Plaintiffs have not objected on additional grounds. The Court ADOPTS those portions of the Magistrate Judge's Report on the October 1 Motion to which Plaintiffs have not objected. "[M]aking some objections but failing to raise others will not preserve all the objections a party may have." *Smith,* 829 F.2d at 1373. The Court's de novo review is limited to whether federal law requires that unmarried adults without children be provided housing accommodations.

Section 8 of the Housing Act, as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f, is a rental subsidy plan under which owners of private housing receive payments on behalf of low-income tenants. *See Baker v. Cincinnati Metropolitan Housing Authority,* 675 F.2d 836, 837 (6th Cir.1982). The funds, although released by HUD, are disbursed by Public Housing Agencies ("PHAs"). *Id.* at 838. PHAs receive funds after executing annual contributions contracts with HUD, for which the PHA must file an administrative plan that specifies the criteria by which eligibility and assistance priority will be determined. *See* 42 U.S.C. § 1437f(b)(1) ("The Secretary is authorized to enter into annual contributions contracts with public housing agencies pursuant to which such agencies may enter into contracts to make assistance payments to owners of existing dwelling units in accordance with this section.").

Section 1437 promotes three overarching goals: (1) to assist "States and political subdivisions of States to remedy the unsafe housing conditions" and the shortage of "decent and safe dwellings" for low-income families; (2) "to assist states and political subdivisions of States to address the shortage of housing affordable to low-income families"; and (3) "to vest in public housing agencies that perform well, the maximum amount of responsibility and flexibility in program administration, with appropriate accountability to public housing residents, localities, and the general public." 42 U.S.C. § 1427(a)(1)(A)-(C); *see also Bakos v. Flint Housing Com'n,* 746 F.2d 1179, 1180 (6th Cir.1984) ("Section 8 is designed to provide safe, sanitary and decent housing to low-income families.").

A prospective applicant for Section 8 benefits must apply for a Certificate of Family Participation, in which the applicant must establish family status and meet low-income requirements. *See Bakos,* 746 F.2d at 1180. "In addition, the application

must satisfy any criteria promulgated by the local PHA, provided that these additional criteria are reasonably related to the objectives of the Section 8 program and are approved by HUD." *Id.* (citations omitted). MHA is a local PHA.

Plaintiffs' "family status" is the relevant issue in this appeal. Plaintiffs argue that MHA's definition of "family" is not reasonably related to the objectives of the Housing Act. Stated differently, Plaintiffs argue that MHA's definition of family differs so fundamentally from the definition applied by HUD that it deprives them of their rights under the Housing Act.

■ In deciding family status, MHA's criteria permit an applicant to add persons to a household in the event of: (1) birth, (2) marriage, (3) adoption, (4) the need for a live-in aide limited to a person providing care, and (5) emergencies. (ECF No. 44–1.)[1] HUD's definition of a family, which adopts the definition used in the Housing Choice Voucher Program, 24 C.F.R. § 982.201, states that a family "may be a single person or a group of persons" or "a group of persons consisting of two or more elderly persons living together." *See also* 24 C.F.R. § 5.403 (family "may include two or more persons with disabilities living together, or one or more persons with

disabilities living with one or more live-in aides.").

■ Differences between PHA and HUD regulations are not enough, absent a showing of an unreasonable relationship between local and federal regulations, to state a claim under the Housing Act. The statutory framework contemplates the possibility of differences between local and federal regulations, going so far as to state that "the policy of the United States ... [is] to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs." *See* 42 U.S.C. § 1437. A "maximum amount of responsibility" entails, not only day-to-day operations, but also the strategic formulation of policies and regulations designed to meet programmatic aims while conserving public resources. Requiring a plaintiff to show an unreasonable relationship between PHA regulations and the underlying goals of the Housing Act maximizes the deference given to PHAs. The desire for deference arises from Congress' intent to facilitate the provision of low-income housing through local authorities, which are more responsive to community needs.

■ Conditioning the expansion of an applicant's household on marital status is reasonably related to the goals of the Housing Act. Congress required PHAs to

---

**1.** Plaintiffs do not attach the MHA and HUD regulations to the Amended Complaint, although they reference differences between them. (Am. Compl. ¶ 2.) Plaintiffs attach MHA and HUD regulations to their Responses to the October 1 and April 10 Motions. (*See* ECF Nos. 32, 44.) The Court "retains the discretion to consider or exclude [ ] extrinsic evidence presented with a Rule 12(b) motion." *Notredan, LLC v. Old Republic Exch. Facilitator Co.,* No. 11–2987–STA–tmp, 2012 U.S. Dist. LEXIS 48976, at *13 (W.D.Tenn. Apr.6, 2012). When a complaint explicitly cites documents that are not attached, courts may consider those extrinsic materials if they are central to plaintiff's claims. *See id.; see*

*also Duferco Steel v. M/V Kalisti,* 121 F.3d 321, 324 n. 3 (7th Cir.1997) ("Documents referred to in, but not attached to, a plaintiff's complaint that are central to its claim may be considered in ruling on a Rule 12(b)(6) motion."). The documents are considered part of the pleadings "for all purposes." Fed. R.Civ.P. 10(c). In the context of a 12(b)(6) motion, "all purposes" means treating the facts contained in the exhibit as true. *Jones v. City of Cincinnati,* 521 F.3d 555, 561 (6th Cir.2008). Because the MHA and HUD regulations are central to Plaintiffs' claims, the Court will consider them in deciding Defendants' Motions.

exercise their authority "consistent with the objects" of the Housing Act, which means implementing objectives that advance the provision of low-income housing. Requiring a marital relationship in circumstances not involving children establishes a clear criterion that serves multiple interests consistent with the Housing Act, including the avoidance of fraudulent applications and the limitation of scarce public resources to legally established family relationships.

HUD is required by law to approve regulations established by PHAs, and Plaintiffs do not allege that HUD failed to approve, or otherwise disagreed with, MHA's regulations. HUD's approval of regulations that differ from its own should be afforded deference. *Baker*, 675 F.2d at 840 ("[A] federal agency's interpretation of its own governing regulations is entitled to deference."). Because MHA's regulations are reasonably related to HUD's, and HUD has not disapproved them, Plaintiffs have failed to state a claim upon which relief can be granted.

Plaintiffs rely on *Hann v. Housing Authority of City of Easton*, 709 F.Supp. 605 (E.D.Pa.1989), in which a district court invalidated a PHA's decision to deny an application to cohabitate brought by the unmarried parents of three children. The PHA had denied the plaintiff's application to advance a "traditional family requirement," a rationale the district court found unpersuasive. The court concluded that unmarried couples with children were entitled to family status because "couples with children can often create a positive family situation when unmarried." *Id.* at 610. Denying the plaintiffs' application because the parents refused to get a marriage certificate produced an unjust result that undermined the purpose of the Housing Act, "which is to shelter the poor." *Id.*

*Hann* is distinguishable. The plaintiffs were denied family status because they were unmarried, despite being in a stable relationship that had produced three children. *Id.* The court reasoned that denying family status under those circumstances undermined the Housing Act, not because of the plaintiffs' marital status, but because it "would be a bizarre world where the refusal of the parents to get a marriage certificate condemns the children to a life of homelessness." *Id.* Plaintiffs do not have children. The policy underlying the decision in *Hann* does not apply.

*Hann* also disapproved of the PHA's criteria insofar as they limited eligibility to "traditional families with married parents." *Id.* at 608. Nothing in the record suggests that MHA's criteria advance a moral agenda. A fair reading of MHA's policy would permit cohabitation for unmarried caregivers and in cases of emergency. Absent the need for a caregiver or an emergency, restricting cohabitation by unmarried adults without children deters fraudulent applications, a policy cited by *Hann* as reasonable. *See id.* (citing *James v. New York City Housing Authority*, 622 F.Supp. 1356 (S.D.N.Y.1985) ("[A] good reason for their eligibility requirement [was] avoidance of fraud.")). MHA's decision not to approve Plaintiffs' request must be given deference.

For the foregoing reasons, Plaintiffs' objection is OVERRULED. The Court ADOPTS the Report on the October 1 Motion.

### B. The November 29 Motion

The Magistrate Judge's Report on the November 29 Motion recommends dismissing Plaintiffs' claim against the Federal Defendants on the basis of sovereign immunity. Plaintiffs do not object to that recommendation. Their objection rests on the difference between MHA and HUD regulations. The Magistrate Judge's Report on the November 29 Motion does not rely on MHA or HUD regulations. Because Plaintiffs have not objected to the

Magistrate Judge's recommendation based on sovereign immunity, the Court ADOPTS the Report on the November 29 Motion.

### C. The April 10 Motion

Plaintiffs object to the Magistrate Judge's Report on the April 10 Motion on the ground that differences between MHA and HUD regulations violate their rights. Plaintiffs do not object on additional grounds. Plaintiffs' rights are not violated by differences between MHA and HUD regulations. The Court OVERRULES Plaintiffs' objection and ADOPTS the Magistrate Judge's Report on the April 10 Motion.

### V. Conclusion

Because Plaintiffs have failed to state a claim, their objections are OVERRULED and the Court ADOPTS the Magistrate Judge's Reports on the October 1, November 29, and April 10 Motions. Defendants' Motions to Dismiss are GRANTED. Plaintiffs' Amended Complaint is DISMISSED.

### REPORT AND RECOMMENDATION ON DEFENDANTS ROBERT LIPSCOMB, LAQUITA SULLIVAN, AND REGINA FISHER'S MOTION TO DISMISS

CHARMIANE G. CLAXTON, United States Magistrate Judge.

Before the Court is Defendants Robert Lipscomb, LaQuita Sullivan, and Regina Fisher's Motion to Dismiss filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry "D.E." # 23). This motion was referred to the United States Magistrate Judge (D.E. # 35) for Report and Recommendation pursuant to 28 U.S.C. Section 636(b)(1)(B)-(C). For the reasons set forth herein, the Magistrate Judge RECOMMENDS that Defendants' Motion to Dismiss be GRANTED.

### I. Background

■ On May 27, 2011, Plaintiffs filed a pro se Complaint alleging claims of housing discrimination. On February 10, 2012, Plaintiffs filed a pro se Amended Complaint (D.E. # 8), which the District Court has determined to be the operative pleading in this case. (D.E. # 14). The Amended Complaint [1] includes the following documents: (1) "Complaint Information" signed by Plaintiff Freeman; (2) "Complaint Information" signed by Plaintiff Hunter; (3) "Complaint" signed by Plaintiff Freeman and Plaintiff Hunter; (4) "Supporting Documents" as to Plaintiff Freeman; and, (5) "Supporting Documents" as to Plaintiff Hunter.[2]

Beginning with the allegations made jointly by Plaintiffs in the portions of the Amended Complaint signed by both Plaintiff Freeman and Plaintiff Hunter, Plaintiffs state that they lived in St. Paul,

---

1. It is well-settled that an amended complaint "supersedes" an original complaint. The practice of considering only the operative complaint is not altered for pro se litigants. *See Nancy Ann Ashenhurst–Gallina v. James A. Kandrevas*, No. 08–11464–BC, 2009 WL 1424802, at *4–*5 (E.D.Mich. May 19, 2009). In this case, Plaintiffs do not incorporate by reference the original Complaint; thus, the Court will consider the Amended Complaint, which the District Court has declared to be the operative pleading.

2. The Amended Complaint's unorthodox collection of documents is inconsistent with Rule 3 of the Federal Rules of Civil Procedure, which requires that a "civil action is commenced by filing *a complaint* with the court." Fed.R.Civ.P. 3. However, the Magistrate Judge will consider the substance of the filings despite this improper form of filing the Amended Complaint.

Minnesota but transferred Plaintiff Hunter's Section 8 voucher to Memphis. Plaintiffs arrived in Memphis on August 22, 2006 and met Defendant Sullivan upon their arrival at the Memphis Housing Authority ("MHA") office. Defendant Sullivan set an initial appointment for Plaintiff Freeman to apply for housing assistance for September 7, 2006, but Plaintiffs state that they needed housing immediately upon their arrival. On August 24, 2006, Plaintiffs made their own arrangements to rent an apartment at New Horizon Apartments in Memphis, Tennessee. Plaintiffs allege that they paid $100.00 for a "rent special" and $100.00 for a security deposit.

At the September 7, 2006 meeting with Defendant Sullivan and Defendant Fisher[3], another MHA employee, Plaintiff Freeman brought an application to obtain housing with his girlfriend, Plaintiff Hunter. Plaintiff Freeman alleges that he wanted to have her on his Section 8 voucher because "she also gets disability for her heart condition, and she's diabetic." Plaintiffs allege that they were told by Defendant Fisher that Plaintiff Hunter could not be included on Plaintiff Freeman's Section 8 voucher and could not live with Plaintiff Freeman. Plaintiffs allege that Defendant Fisher "marked [Plaintiff Hunter's] name off" of his housing application and required Plaintiff Freeman to initial each of these alterations. Plaintiffs further allege that Defendant Sullivan and Defendant Fisher were "saying things behind [their] backs, things with expression" that they could not

understand. Plaintiffs allege that Defendant Sullivan asked Plaintiff Freeman when he and Plaintiff Hunter were getting married and "laughed."

Following the meeting, Plaintiffs allege that Defendant Sullivan and Defendant Fisher mishandled and delayed the processing of his paperwork, conspired with New Horizon Apartments, and "worked the system together" to discriminate against them. As a result, Plaintiffs allege that Plaintiff Freeman was required to continue paying rent at New Horizon Apartments from August 24, 2006 until October.[4]

Finally, Plaintiffs allege that Plaintiff Freeman requested "grab bars" in his apartment bathroom due to his scoliosis. Plaintiffs state that New Horizon Apartments and MHA did not provide this accommodation and deny that any such request was made.

Plaintiffs allege that the result of all of these failures was that they suffered discrimination. Plaintiffs allege that the discrimination particularly impacted them because they both have disabilities. None of the portions of Plaintiffs' joint portion of the Amended Complaint cite the legal bases for their claims against Defendant Sullivan, Defendant Fisher, or Defendant Lipscomb or set forth the relief requested.[5]

In addition to the joint allegations, Plaintiff Freeman and Plaintiff Hunter have filed portions of the Amended Complaint that they have each individually

---

3. Defendant Fisher is also referred at various times in the Complaint as "Fischer." However, as the Court's docket reflects the name of "Fisher," the Court will refer to her as such.

4. Plaintiffs do not specify the details as to how long they continued to pay rent at New Horizon Apartments other than it continued until "October," as no year is provided along with the month.

5. Other portions of the Amended Complaint against other Defendants reference violations of Sections 804 of Title VIII of the Civil Rights Act "as amended by the Fair Housing Act of 1988," Section 504 of the 1973 Rehabilitation Act, MHA "rules and regulations," U.S. Housing and Urban Development "rules and regulations," and the "H.U.D. Housing Act."

signed, which contain similar allegations to the joint allegations. Plaintiff Freeman alleges that Defendant Sullivan failed to allow him to apply for housing with Plaintiff Hunter, delayed processing his Section 8 portability paperwork for "five months," and failed to install grab bars in his apartment bathroom upon request. Plaintiff Freeman alleges that Defendant Fisher delayed the portability paperwork for five months and failed to permit "reasonable modifications to a dwelling." Plaintiff Freeman alleges that Defendant Lipscomb refused to allow Plaintiff Freeman to live with Plaintiff Hunter, that he needed to live with Plaintiff Hunter to help him move around due to his scoliosis, that Defendant Lipscomb delayed Plaintiff Freeman's portability paperwork for five months in 2006 and for six months in 2009 [6], and that Defendant Lipscomb failed to make a "reasonable accommodation." Plaintiff Freeman's individually signed portions of the Amended Complaint do not cite any legal bases for his claims against Defendant Sullivan, Defendant Fisher, or Defendant Lipscomb and do not set forth the relief requested.

In her individually signed portion of the Amended Complaint, Plaintiff Hunter alleges that Defendant Sullivan laughed after asking whether she and Plaintiff Freeman were getting married, that Defendant Sullivan did not allow Plaintiff Hunter to initial portions of Plaintiff Freeman's housing application as part of his household, that Defendant Sullivan required that Plaintiff Freeman "draw a line" across the portions signed of his application signed by Plaintiff Hunter and initial each change, and that Defendant Sullivan "humiliated" her. Plaintiff Hunter alleges that Defendant Fisher also reviewed the MHA policy and advised that Plaintiff Hunter could not be added to Plaintiff Freeman's housing application because they were not married, that Defendant Fisher drew a line through the portions of Plaintiff Freeman's housing application that Plaintiff Hunter signed, and that Defendant Fisher joked, laughed, and "humiliated" her. Plaintiff Hunter alleges that Defendant Lipscomb intentionally delayed the housing paperwork, which forced them to pay full rent for five months. Plaintiff Hunter alleges that it only took one month in Minnesota for the Housing and Urban Development office to begin "paying their portion of the rent." Plaintiff Hunter's individually signed portions of the Amended Complaint do not cite any legal bases for her claims against Defendant Sullivan, Defendant Fisher, or Defendant Lipscomb and do not set forth the relief requested.

Plaintiffs additionally have added individual exhibits to the Amended Complaint. Plaintiff Freeman has provided a Notice of Change in Payment from the Social Security Administrate dated November 27, 2011 stating that he will begin receiving $698.00 per month in January, 2012. Plaintiff Freeman also attached a Tenant Rent Allocation Notice from Dakota County Community Development Agency in Eagan, Minnesota, dated November 22, 2011, showing that Plaintiff Freeman and Plaintiff Hunter are both "[a]ssisted household members," that the "contract rent" was $690.00, that the "tenant rental portion" was $387.00, and that the "CDA assisted portion" was $303.00. Plaintiff Hunter also attached a Notice of Change in Payment from the Social Security Administration dated November 27, 2011 stating that she will begin receiving $530.00 per month in January, 2012.

---

6. This is the sole reference in any portion of the Amended Complaint to difficulties in 2009. The Amended Complaint does not contain any factual information regarding this alleged delay.

On October 1, 2012, Defendants Lipscomb, Sullivan, and Fisher brought the instant Motion to Dismiss, arguing that the claims against them should be dismissed for the following reasons: (1) Plaintiff Freeman has failed to state a claim for which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; (2) Plaintiffs Freeman and Hunter's claims against Defendants Lipscomb, Sullivan, and Fisher are official-capacity claims that should be dismissed; and, (3) Plaintiff Hunter does not have standing pursuant to Rule 12(b)(1) or Rule 12(b)(6) to bring her claims. Defendants additionally argue that named defendants Adrena James and Charisse Stewart [7], who have not been served with process and who are not formally represented in this action, are not current MHA employees,[8] although Defendants do not specify what relief they would like the Court to grant on this issue. Defendants further argue that a dismissal of the claims against Lipscomb, Sullivan, and Fisher "should operate against all named defendants, including MHA," although MHA had not yet been served when the instant motion was filed.

On October 12, 2012, Plaintiffs filed a "Motion Objecting to the Dismissal of this Case," which the Magistrate Judge recommends be construed as a Response to the instant Motion to Dismiss. (D.E. # 36). Plaintiffs argue that Defendants have violated the Housing and Urban Development ("HUD") rules and regulations by requiring them to be married to cohabitate. Plaintiffs restate the remaining alleged violations of the law as follows: (1) refusing to make reasonable accommodations by not installing grab bars at the New Horizon Apartments and the Winbranch Apartments [9]; and, (2) delayed processing of the portability paperwork, which required them to pay "full rent for five months." As an exhibit, Plaintiffs attached a portions of a document entitled "HUD HOUSING PROGRAMS: TENANTS' RIGHTS," including a section entitled, "REJECTING APPLICANTS BASED UPON STATUS OR FAMILIAL COMPOSITION," and Plaintiffs appear to have marked certain portions that they assert apply to their case.[10] Plaintiff further state that James, Stewart and other Defendants were "supposed to have been served."

## II. Proposed Legal Standard

 Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for lack of subject-matter jurisdiction. Fed.R.Civ.P. 12(b)(1). A Rule 12(b)(1) motion that attacks jurisdiction based upon the face of the pleading requires that the court accept the non-moving party's allegation of facts as true. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir.2004). A Rule 12(b)(1) motion that challenges the factual basis of the court's jurisdiction requires the party asserting jurisdiction bears the burden of

---

7. Defendants further argue that MHA has not been served with process; however, since the filing of the instant Motion to Dismiss, MHA has been serve with process and has filed its own Motion to Dismiss (D.E. # 43). The Magistrate Judge will issue a separate Report and Recommendation on this motion.

8. Counsel for Defendants Lipscomb, Sullivan, and Fisher state that James is no longer employed by MHA and that Steward has never been employed by MHA.

9. Winbranch Apartments is not mentioned in any portion of Plaintiffs' Amended Complaint.

10. Plaintiffs' Response additionally refers to the original Complaint's demand for one million dollars in damages for Plaintiff Freeman and one million dollars in damages for Plaintiff Hunter. As the Magistrate Judge has already explained, *see, supra,* n. 1, the operative pleading in the instant case is the Amended Complaint.

establishing it. *Id.* The Court must be satisfied that the jurisdictional and standing requirements are met before addressing the substance of Plaintiff's claims on the merits. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R.Civ.P. 12(b)(6). In addressing a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 361 (6th Cir.2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting Fed.R.Civ.P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests.'" *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

Nonetheless, a complaint must contain sufficient facts "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 678–79, 129 S.Ct. 1937.

▨ Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94, 127 S.Ct. 2197 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir.1996) (citing *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir.1991)). The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir.1989) A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell,* 414 Fed.Appx. 784, 786 (6th Cir.2011) (quoting *Ashcroft,* 556 U.S. at 678, 129 S.Ct. 1937) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford,* 542 U.S. 225, 231, 124 S.Ct. 2441, 159 L.Ed.2d 338 (2004). District Courts are also not "required to create" a pro se litigant's claim for him. *Payne v. Secretary of Treasury,* 73 Fed.Appx. 836, 837 (6th Cir.2003).

### III. Proposed Conclusions of Law

#### A. *Standing of Plaintiff Hunter*

▨ First, Defendants assert that Plaintiff Hunter does not have standing to

bring the instant claims because she has not asserted any violation of her legal rights but instead seeks to vindicate Plaintiff Freeman's legal rights. Defendants argue that Plaintiff Hunter's claims must be dismissed as a matter of law pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. As standing is a "threshold question in every federal case," *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Court will address this issue as to Plaintiff Hunter at the outset.

 The requirement of standing limits federal court jurisdiction to actual cases and controversies so that the judicial process is not transformed into "a vehicle for the vindication of the value interests of concerned bystanders." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). To satisfy the standing requirement of Article III of the United States Constitution, "a plaintiff must have suffered some actual or threatened injury due to the alleged conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coal Operators and Assoc., Inc. v. Babbitt,* 291 F.3d 912 (6th Cir.2002) (citing *Valley Forge,* 454 U.S. at 473, 102 S.Ct. 752). Thus, "the 'irreducible minimum' constitutional requirements for standing are proof of injury in fact, causation, and redressability." *Id.* A plaintiff bears the burden of demonstrating standing and must plead its components with specificity. *Id.*

 In the instant case, Plaintiff Hunter's Complaint alleges two grievances: (1)

the denial of Plaintiff Freeman's housing application; and (2) her humiliation during the process of applying for Plaintiff Freeman's government-subsidized housing. With respect to the denial of Plaintiff Freeman's housing application, Plaintiff Hunter has not plead any injury in fact that she has suffered. Specifically, Plaintiff Hunter has not alleged that she has been denied any of her rights to government-subsidized housing. In fact, the Amended Complaint does not contain any reference to Plaintiff Hunter's attempts to secure her own government-subsidized housing. Instead, Plaintiff Hunter alleges that Plaintiff Freeman's application has been denied and that, as such, she cannot live with him in his government-subsidized housing. Yet this is not sufficient to plead with specificity that she has suffered any violation of her rights pursuant to any law, and absent such pleading; Plaintiff Hunter cannot demonstrate that the denial of Plaintiff Freeman's housing application constitutes an injury in fact as to her. The Supreme Court has made clear that Plaintiff Freeman cannot attempt to vindicate her value interest in Plaintiff Freeman's housing in federal court as a concerned bystander.

 With respect to Plaintiff Hunter's alleged humiliation, Plaintiff Hunter has not plead any legal violation that she has suffered due to the MHA employees' alleged rudeness or disrespect towards her in the consideration of Plaintiff Freeman's housing application. An allegation of humiliation is insufficient to provide Defendants with fair notice of the basis of her claim. Thus, Plaintiff Hunter has failed to plead with specificity how this alleged conduct by Defendants Lipscomb, Sullivan, and Fisher rises to the level of a injury in fact sufficient to establish standing.

Accordingly, the Magistrate Judge recommends that the District Court conclude

that Plaintiff Hunter's claims fail to meet the threshold requirement of standing and that Plaintiff Hunter's claims against Defendants Lipscomb, Sullivan, and Fisher be dismissed as a matter of law.

### B. Plaintiff Freeman's Claims

Next, Defendants assert that Plaintiff Freeman's allegations fail to state a claim upon which relief may be granted and must be dismissed as a matter of law pursuant to Rule 12(b)(6). Plaintiff Freeman's claims are as follows: (1) that his government-subsidized housing application was denied on an illegal basis because he sought to live with his girlfriend, Plaintiff Hunter; (2) that his housing portability paperwork was delayed as part of a conspiracy with New Horizon Apartments, which caused him to pay inflated rent; and, (3) that he was denied the installation of "grab bars" at his New Horizons Apartments to assist him with his scoliosis.

Defendants correctly argue that Plaintiff Freeman has failed to cite the legal basis for any of these allegations against Defendants Lipscomb, Hunter, and Sullivan. As the Court has already stated, while pro se litigants are entitled to a liberal construction of their pleadings, it is not the Court's obligation to either speculate about the nature of the claims asserted or create a litigant's claims for him. From this perspective, the Court will briefly address each of Plaintiff Freeman's claims.

As to Plaintiff Freeman's claim that he was denied government-subsidized housing with his girlfriend, Plaintiff Hunter, the exhibit of purported HUD Regulations to Plaintiff's Response cites various cases regarding the obligations of a public housing authority to comply with federal and state law in their eligibility determinations. Certain cases discuss whether a public housing authority's definition of family excluding unmarried parents of children is permissible and determine that this criteria is not appropriate. *See Hann v. Housing Authority of City of Easton,* 709 F.Supp. 605 (1989) (considering the legality of a public housing authority's eligibility determination under the United States Housing Act of 1937 ("USHA"), as amended, 42 U.S.C. § 1437f, and the regulations promulgated by HUD to effectuate the Act); *Worcester Housing Authority v. Massachusetts Comm'n Against Discrimination,* 406 Mass. 244, 547 N.E.2d 43 (1989) (considering the legality of a public housing authority's eligibility determination under Massachusetts state law). However, Plaintiff Freeman's exhibit does not cite any authority that a public housing authority may not prohibit two adults *without children* from sharing one applicant's public housing.[11] Thus, the Magistrate Judge recommends that the District Court conclude that Plaintiff Freeman's claim that his government-subsidized housing application was denied because he insisted upon living with his girlfriend fails to state a claim upon which relief may be granted and should be dismissed as a matter of law.[12]

■ As to Plaintiff Freeman's claim that his paperwork was delayed for various periods, this allegation appears to be in-

---

11. Plaintiff Freeman's allegations that the Dakota County Community Development Agency in Eagan, Minnesota allowed he and Plaintiff Hunter to cohabitate is not relevant to the issue before the Court. Plaintiff has cited no authority that, simply because this agency considers them to be eligible, that MHA is required to make the same eligibility determination.

12. Plaintiff Freeman's Complaint also references the effects of the denial of his government-subsidized housing on him due to his disabilities, including his "slow learner disability." However, Plaintiff Freeman's Amended Complaint does not allege any facts supporting his claim that his application was actually *denied* on the basis of his disabilities; instead, Plaintiff Freeman's Amended Com-

consistent with Plaintiff Freeman's claim that, at his initial meeting at MHA on September 7, 2006, Defendant Sullivan and Defendant Fisher informed him that his application was denied because he sought to apply with his girlfriend, Plaintiff Hunter. Further, Plaintiff Freeman alleges that MHA asked him to sign a document stating that he understood that he was waiving his right to government-subsidized housing because he insisted upon living with Plaintiff Hunter. While Plaintiff Freeman's Amended Complaint does not state whether Plaintiff signed this document or not, there are no further allegations in the Amended Complaint that Plaintiff Freeman actually applied to live on his own in public housing. Thus, as his request to cohabitate was denied and no request to live on his own is alleged to have been made, Plaintiff Freeman has failed to allege what supposed delays violated his legal rights. Accordingly, the Magistrate Judge recommends to the District Court that Plaintiff Freeman' claim regarding delays of his paperwork fails to state a claim upon which relief may be granted and should be dismissed as a matter of law.[13]

 Finally, Plaintiff Freeman argues that he requested that grab bars be installed in his apartment at New Horizon Apartments and that the denial of this request violated the law. However, the Amended Complaint does not allege that Defendants Lipscomb, Sullivan, or Fisher or any other named Defendant had any authority over that decision. Instead, as Plaintiff Freeman alleges, his request for government-subsidized housing was denied on or about September 7, 2006. Thus,

Plaintiff Freeman was a tenant at New Horizon Apartments, who is not a party to the instant case. Therefore, the Magistrate Judge recommends to the District Court that Plaintiff Freeman's claim regarding the alleged denial of installation of grab bars fails to state a claim upon which relief may be granted and should be dismissed as a matter of law.

### C. Claims Against Defendant James, Defendant Stewart, and Defendant MHA

Finally, counsel for Defendants Lipscomb, Sullivan, and Fisher has asserted as follows: (1) that named defendants James and Stewart are not current MHA employees, and (2) that a dismissal of Plaintiff Freeman and Plaintiff Hunter's claims against Defendants Sullivan, Lipscomb, and Fisher "should operate as a dismissal against all named defendants, including MHA."

The record reflects that James, Stewart, and MHA had not been served with process upon the filing of the instant motion. Since the filing of this motion, MHA has been served with process and has filed its own Motion to Dismiss (D.E. # 43), which the Magistrate Judge will address in a separate Report and Recommendation. Further, the question of whether the claims against James and Stewart should be dismissed is not before the Court. If these Defendants are properly served, they will have the opportunity to make any Rule 12 motions that they believe are appropriate. However, at this time, the Magistrate Judge recommends to the District Court that no action be taken as to James and Stewart.

---

plaint makes clear that he was informed that the denial was based upon his desire to cohabitate with his girlfriend but alleges that the denial impacted him more severely due to his disabilities.

**13.** With respect to the alleged delay from August 22, 2006 when Plaintiffs arrived in Memphis until September 7, 2006 when Plaintiffs were given an appointment with MHA, Plaintiffs have also not alleged how this delay could constitute a violation of the law.

## IV. Conclusion

For the reasons set forth herein, the Magistrate Judge recommends that Plaintiff Hunter's claims against Defendants Lipscomb, Sullivan, and Fisher be dismissed as a matter of law because Plaintiff Hunter lacks standing. The Magistrate Judge recommends that Plaintiff Freeman's claims against Defendants Lipscomb, Sullivan, and Fisher be dismissed as a matter of law for failure to state a claim upon which relief may be granted.[14] Ultimately, the Magistrate Judge recommends that Defendant Lipscomb, Sullivan, and Fisher's Motion to Dismiss (D.E. # 23) be GRANTED.

DATED this 24th day of April, 2013.

## REPORT AND RECOMMENDATION ON DEFENDANTS UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT OFFICE OF ENFORCEMENT/FHEO, LYNN GROSSO, GREGORY BERNARD KING, AND CARLOS OSEGUEDA'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants United States Department of Housing and Urban Development Office of Enforcement/FHEO ("HUD"), Lynn Grosso, Gregory Bernard King, and Carlos Osegueda's (collectively "Federal Defendants")[1] Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (Docket Entry "D.E." # 33). This motion was referred to the United States Magistrate Judge (D.E. # 35) for Report and Recommendation pursuant to 28 U.S.C. Section 636(b)(1)(B)-(C). For the reasons set forth herein, the Magistrate Judge recommends that Defendants' Motion to Dismiss be GRANTED.

## I. Background

On May 27, 2011, Plaintiffs filed a pro se Complaint alleging claims of housing discrimination. On February 10, 2012, Plaintiffs filed a pro se Amended Complaint (D.E. # 8), which the District Court has determined to be the operative pleading in this case. (D.E. # 14). The Amended Complaint[2] includes the following documents: (1) "Complaint Information" signed by Plaintiff Freeman; (2) "Complaint Information" signed by Plaintiff Hunter; (3) "Complaint" signed by Plaintiff Freeman and Plaintiff Hunter; (4) "Supporting Documents" as to Plaintiff Freeman; and, (5) "Supporting Docu-

---

14. As the Magistrate Judge recommends that Plaintiff Hunter lacks standing and Plaintiff Freeman's allegations fail to state a claim upon which relief may be granted, the Magistrate Judge did not reach the issue of whether the claims against Defendants Lipscomb, Sullivan, and Fisher should be dismissed as official-capacity claims that constitute claims against MHA.

1. The United States asserts that individually named federal defendant Turner Russell, Director, Office of Enforcement/FHEO, U.S. Department of Housing and Urban Development, "upon information and belief, has not received service of process, and is therefore not a party to this motion." The Court's

Electronic Case Filing docket likewise reflects that the summons as to Turner Russell was returned unexecuted on October 2, 2012.

2. It is well-settled that an amended complaint "supersedes" an original complaint. The practice of considering only the operative complaint is not altered for pro se litigants. *See Nancy Ann Ashenhurst–Gallina v. James A. Kandrevas,* No. 08–11464–BC, 2009 WL 1424802, at *4–*5 (E.D.Mich. May 19, 2009). In this case, Plaintiffs do not incorporate by reference the original Complaint; thus, the Court will consider the Amended Complaint, which the District Court has declared to be the operative pleading.

ments" as to Plaintiff Hunter.[3]

There are no allegations against HUD or the individually named federal defendants in the portion of the Amended Complaint signed by both Plaintiff Freeman and Plaintiff Hunter. In Plaintiff Freeman's individually signed portion of the Amended Complaint, he alleges that HUD refused to allow his girlfriend, Plaintiff Hunter, to live with him. Plaintiff Freeman alleges that Plaintiff Hunter "needed" him to "attend to her" because she has diabetes and heart problems, had surgery on her right toe, "gets tired of getting her shots," and "can barely move around herself." Plaintiff Freeman further alleges that HUD is "keeping [whatever] violations of the law" committed by MHA "away from" them.

Plaintiff Freeman alleges that Defendant Grosso violated the law by signing paperwork that was addressed to Director Turner Russell, knowing that Memphis Housing Authority ("MHA") violated he and Plaintiff Hunter's rights but doing "nothing to stop it," and denying that MHA "did any wrong." Plaintiff Freeman also questions why mail from Defendant Grosso was coming from Fort Worth, Texas rather than Washington, D.C.

Plaintiff Freeman alleges that Defendant King violated the law when "he added facts to describe, and clarify, the incident," which Plaintiff Freeman claims supported his allegations of failure to make a reasonable accommodation[4], but then apparently acted contrarily to these assertions and denied that MHA "did wrong." Plaintiff

Freeman alleges that he asked Defendant King if any men were "on the Section 8 program, down South." Plaintiff Freeman alleges that Defendant King responded that he was "the only one." Thus, Plaintiff Freeman alleges that "they" might be discriminating against men by not providing them government-subsidized housing "down South."

Plaintiff Freeman alleges that Defendant Osegueda knew that MHA violated their rights because Defendant King, a Civil Rights Analyst and Conciliator for HUD, "added facts, to describe and clarify the incidents, that support the failure" to make a reasonable accommodation.

In Plaintiff Hunter's individually signed portions of the Amended Complaint, she alleges that HUD denied "any wrongdoing of Federal Law regarding the Housing Act and Rehabilitation Act." She alleges that Defendant Grosso denied that the federal government had violated the Housing Act and Rehabilitation Act. She alleges that Defendant Osegueda "denied there was discrimination, when facts were stated that [she] was clearly discriminated against, because of facts in . . . [the] Housing Act and Rehabilitation Act." She alleges that Defendant King "constantly denied" that HUD had discriminated against her "for being on [Plaintiff Freeman's] Section 8 Voucher" for affordable housing. She alleges that Defendant King also told Plaintiff Freeman that he did not know "what good it . . . would do" for him to speak with Plaintiff Hunter about their situation

---

3. The Amended Complaint's unorthodox collection of documents is inconsistent with Rule 3 of the *Federal Rules of Civil Procedure*, which requires that a "civil action is commenced by filing *a complaint* with the court." Fed.R.Civ.P. 3. However, the Magistrate Judge will consider the substance of the filings despite this improper form of filing the Amended Complaint.

4. Other portions of the Amended Complaint clarify that the alleged failure to make a reasonable accommodation is based upon the fact that no "grab bars" were installed in the New Horizon Apartments.

but that, in her opinion, Defendant King "should have wanted ... to talk to [her]" because her "name is on a case number" with HUD. She alleges that Defendant King "tried to settle" their case via telephone, advised that MHA was prepared to offer $521.00, then offered $1,000.00 to settle the case. Plaintiff Hunter alleges that these offers to settle demonstrate that HUD had violated the law.

Plaintiffs additionally have added individual exhibits to the Amended Complaint. Plaintiff Freeman has provided a Notice of Change in Payment from the Social Security Administrate dated November 27, 2011 stating that he will begin receiving $698.00 per month in January, 2012. Plaintiff Freeman also attached a Tenant Rent Allocation Notice from Dakota County Community Development Agency in Eagan, Minnesota, dated November 22, 2011, showing that Plaintiff Freeman and Plaintiff Hunter are both "[a]ssisted household members," that the "contract rent" was $690.00, that the "tenant rental portion" was $387.00, and that the "CDA assisted portion" was $303.00. Plaintiff Hunter also attached a Notice of Change in Payment from the Social Security Administration dated November 27, 2011 stating that she will begin receiving $530.00 per month in January, 2012.

On November 29, 2012, HUD and the individually named federal defendants brought the instant Motion to Dismiss or, in the alternative, Motion for Summary Judgment pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure. The Federal Defendants argue that Plaintiffs brought the instant action pursuant to the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. § 3601 *et seq.*, and that Plaintiffs appear to allege that the Federal Defendants violated Sections 3604(f)(1) and (f)(3)(b) of the FHA and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*[5] The Federal Defendants assert that Plaintiffs' Amended Complaint should be dismissed for the following reasons: (1) failure to allege an applicable waiver of sovereign immunity; (2) lack of subject matter jurisdiction; (3) failure to present "any evidence to support the claim that the HUD employees, sued in their individual capacity, did not follow proper procedures regarding investigation and resolution of Plaintiffs' complaints previously filed with HUD." In support of the Federal Defendants' motion, they filed the following exhibits: (1) Second Amended Housing Complaint, Case Numbers 04–07–0190–8 and 04–07–0190–4, filed by Plaintiff Freeman and listing Plaintiff Hunter under "Other Aggrieved Persons"; (2) Determination issued in *Ricky Freeman v. New Horizon Apartments, et al.,* Case 04–07–0185–8; and, (3) Determination issued in *Ricky Freeman v. Memphis Housing Authority (Section 8),* Case 04–07–0190–8.

On December 10, 2012, Plaintiffs filed their Response to the Federal Defendants' motion. Plaintiffs argue that they have stated a claim upon which relief may be granted "for a total of two million dollars"—one million dollars as to Plaintiff Freeman and one million dollars as to Plaintiff Hunter—or "more than that, for each separate and distinct discriminatory practice." Plaintiffs state that, as all public housing authority "work for" HUD, that MHA's "rules and regulations" cannot be different from HUD's. Plaintiffs allege that

---

**5.** Plaintiffs' Amended Complaint does not explicitly mention that HUD, Grosso, King, or Osegueda violated any of these provisions. Instead, it appears to the Court that the Federal Defendants may believe that these are the potential legal bases for Plaintiffs' Amended Complaint based upon the prior HUD complaints and the factual bases listed by Plaintiffs in the Amended Complaint.

HUD "published rules and regulations to implement the HCVP, in title 24, that states, that disabled persons can live together." [6] Plaintiffs claim that Defendants Grosso, King, and Osegueda violated their rights "because they misused their authority." Plaintiff further claim that Defendant King's letter dated November 6, 2007 "states that they definitely did something against us." In support of Plaintiffs' Response, they filed the following documents: (1) Page 9 of 15 of a document that purports to be from the record in *Freeman v. Memphis Housing Authority,* Case 04–07–0190–8, with handwritten underlinings and markings; (2) a document purportedly from Memphis Housing Authority's Administrative Plan Housing Choice Voucher Program; and, (3) a November 6, 2007 letter from Defendant King to Plaintiff Freeman regarding his second amended complaint in Case 04–07–0190–4.

## II. Proposed Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for lack of subject-matter jurisdiction. Fed.R.Civ.P. 12(b)(1). A Rule 12(b)(1) motion that attacks jurisdiction based upon the face of the pleading requires that the court accept the non-moving party's allegation of facts as true. *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir.2004). A Rule 12(b)(1) motion that challenges the factual basis of the court's jurisdiction requires the party asserting jurisdiction bears the burden of establishing it. *Id.* The Court must be satisfied that the jurisdictional and standing requirements are met before addressing the substance of Plaintiff's claims on the merits. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R.Civ.P. 12(b)(6). In addressing a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 361 (6th Cir.2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting Fed.R.Civ.P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests.'" *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

Nonetheless, a complaint must contain sufficient facts "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing

---

**6.** It appears to the Court that Plaintiffs' reference to the HCVP may be to Memphis Housing Authority's Housing Choice Voucher Program, which is referenced in Plaintiffs' exhibits.

*Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 678–79, 129 S.Ct. 1937.

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94, 127 S.Ct. 2197 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir.1996) (citing *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir.1991)). The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir.1989) A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell,* 414 Fed. Appx. 784, 786 (6th Cir.2011) (quoting *Ashcroft,* 556 U.S. at 678, 129 S.Ct. 1937) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford,* 542 U.S. 225, 231, 124 S.Ct. 2441, 159 L.Ed.2d 338 (2004). District Courts are also not "required to create" a pro se litigant's claim for him. *Payne v. Secretary of Treasury,* 73 Fed. Appx. 836, 837 (6th Cir.2003).

### III. Proposed Conclusions of Law

 First, the United States asserts sovereign immunity and argues that Plaintiffs' Amended Complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (citations omitted). The terms of the United States' "consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). "In the absence of clear congressional consent," there is no jurisdiction in any court to entertain suits against the United States. *Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349 (quoting *Sherwood,* 312 U.S. at 587–88, 61 S.Ct. 767). Plaintiff bears the burden to "identify a waiver of sovereign immunity to proceed." Sovereign immunity extends to employees sued for compensatory damages in their official capacity, as such an action is in essence a suit against the sovereign for recovery of monies to be paid from its treasury. *Martin v. University of Louisville,* 541 F.2d 1171, 1177 (6th Cir.1976). *Toledo v. Jackson,* 485 F.3d 836, 838 (6th Cir.2007) (quoting *Reetz v. United States,* 224 F.3d 794, 795 (6th Cir.2000)).

 In the instant case, Plaintiffs' Amended Complaint does not specify the legal basis for their claims against the Federal Defendants. Without setting forth any statutory basis for their claims, Plaintiff cannot bear the burden of identifying any Congressional waiver in the statute of sovereign immunity. Further, Plaintiffs did not plead any waiver of sovereign immunity in their Amended Complaint, nor did they argue that any such waiver had occurred in their Response to this Motion. With respect to the individually named Federal Defendants, the Amended Complaint only requests com-

pensatory damages for alleged violations in their official capacity; thus, sovereign immunity extends to Defendants Grosso, King, and Osegueda. As Plaintiff bears the burden to establish waiver of sovereign immunity and has failed to do so, the Magistrate Judge recommends that the claims against Defendants HUD, Grosso, King, and Osegueda be dismissed on the grounds of sovereign immunity for lack of subject matter jurisdiction under Rule 12(b)(1).[7]

## IV. Conclusion

For the reasons set forth herein, the Magistrate Judge recommends that Plaintiffs' claims against Defendants HUD, Grosso, King and Osegueda be dismissed as a matter of law pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[8]

## REPORT AND RECOMMENDATION ON DEFENDANT MEMPHIS HOUSING AUTHORITY'S MOTION TO DISMISS

Before the Court is Defendant Memphis Housing Authority's ("MHA") Motion to Dismiss (Docket Entry "D.E." # 43) filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion was referred to the United States Magistrate Judge (D.E. # 35) for Report and Recommendation pursuant to 28 U.S.C. Section 636(b)(1)(B)-(C). For the reasons set forth herein, the Magistrate Judge RECOMMENDS that Defendants' Motion to Dismiss be GRANTED.

## I. Background

On May 27, 2011, Plaintiffs filed a pro se Complaint alleging claims of housing discrimination. On February 10, 2012, Plaintiffs filed a pro se Amended Complaint (D.E. # 8), which the District Court has determined to be the operative pleading in this case. (D.E. # 14). The Amended Complaint[1] includes the following documents: (1) "Complaint Information" signed by Plaintiff Freeman; (2) "Complaint Information" signed by Plaintiff Hunter; (3) "Complaint" signed by Plaintiff Freeman and Plaintiff Hunter; (4) "Supporting Documents" as to Plaintiff Freeman; and, (5) "Supporting Docu-

---

7. Additionally, while Plaintiffs have not clearly plead the legal basis of their claims against HUD, Gross, King, and Osegueda, the Federal Defendants have endeavored to ascertain the potential legal grounds for Plaintiffs' Amended Complaint. The Federal Defendants assert that Plaintiffs appear to allege that they violated Sections 3604(f)(1) and (f)(3)(b) of the FHA and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 701 *et seq.* The Supreme Court has held that Congress has not waived sovereign immunity against awards of monetary damages for violations of Section 504 of the Rehabilitation Act of 1973. *Lane v. Pena*, 518 U.S. 187, 190–198, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *see also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir.2009). The Sixth Circuit has likewise held that "nothing in the Fair Housing Act ... can be construed as a congressional abrogation" of sovereign immunity. *Morris v. Dehaan*, 944 F.2d 905 (6th Cir.1991).

8. As the Magistrate Judge recommends that Plaintiffs' claims against HUD, Grosso, King and Osegueda be dismissed as a matter of law on the grounds of sovereign immunity, the Magistrate Judge did not reach the remaining issues raised by the Federal Defendants.

1. It is well-settled that an amended complaint "supersedes" an original complaint. The practice of considering only the operative complaint is not altered for pro se litigants. *See Nancy Ann Ashenhurst–Gallina v. James A. Kandrevas*, No. 08–11464–BC, 2009 WL 1424802, at *4–*5 (E.D.Mich. May 19, 2009). In this case, Plaintiffs do not incorporate by reference the original Complaint; thus, the Court will consider the Amended Complaint, which the District Court has declared to be the operative pleading.

ments" as to Plaintiff Hunter.[2]

Beginning with the allegations made jointly by Plaintiffs in the portions of the Amended Complaint signed by both Plaintiff Freeman and Plaintiff Hunter, the sole allegation against MHA is that Plaintiff Freeman requested "grab bars" in his bathroom due to scoliosis and that MHA and New Horizon Apartments denied that any such request was made. In addition to this allegation against MHA, the jointly signed portion contains allegations against MHA employees acting in their official capacities. Plaintiffs state that they lived in St. Paul, Minnesota but transferred Plaintiff Hunter's Section 8 voucher to Memphis. Plaintiffs arrived in Memphis on August 22, 2006 and met Defendant Sullivan upon their arrival at the MHA office. Defendant Sullivan set an initial appointment for Plaintiff Freeman to apply for housing assistance for September 7, 2006, but Plaintiffs state that they needed housing immediately upon their arrival. On August 24, 2006, Plaintiffs made their own arrangements to rent an apartment at New Horizon Apartments in Memphis, Tennessee. Plaintiffs allege that they paid $100.00 for a "rent special" and $100.00 for a security deposit.

At the September 7, 2006 meeting with Defendant Sullivan and Defendant Fisher[3], another MHA employee, Plaintiff Freeman brought an application to obtain housing with his girlfriend, Plaintiff Hunter. Plaintiff Freeman alleges that he wanted to have her on his Section 8 voucher be-

cause "she also gets disability for her heart condition, and she's diabetic." Plaintiffs allege that they were told by Defendant Fisher that Plaintiff Hunter could not be included on Plaintiff Freeman's Section 8 voucher and could not live with Plaintiff Freeman. Plaintiffs allege that Defendant Fisher "marked [Plaintiff Hunter's] name off" of his housing application and required Plaintiff Freeman to initial each of these alterations. Plaintiffs further allege that Defendant Sullivan and Defendant Fisher were "saying things behind [their] backs, things with expression" that they could not understand. Plaintiffs allege that Defendant Sullivan asked Plaintiff Freeman when he and Plaintiff Hunter were getting married and "laughed."

Following the meeting, Plaintiffs allege that Defendant Sullivan and Defendant Fisher mishandled and delayed the processing of his paperwork, conspired with New Horizon Apartments, and "worked the system together" to discriminate against them. As a result, Plaintiffs allege that Plaintiff Freeman was required to continue paying rent at New Horizon Apartments from August 24, 2006 until October.[4]

Plaintiffs allege that the result of all of these failures was that they suffered discrimination. Plaintiffs allege that the discrimination particularly impacted them because they both have disabilities. None of the portions of Plaintiffs' joint portion of the Amended Complaint cite the legal bases for their claims against MHA or the

---

**2.** The Amended Complaint's unorthodox collection of documents is inconsistent with Rule 3 of the Federal Rules of Civil Procedure, which requires that a "civil action is commenced by filing *a complaint* with the court." Fed.R.Civ.P. 3. However, the Magistrate Judge will consider the substance of the filings despite this improper form of filing the Amended Complaint.

**3.** Defendant Fisher is also referred at various times in the Complaint as "Fischer." However, as the Court's docket reflects the name of "Fisher," the Court will refer to her as such.

**4.** Plaintiffs do not specify the details as to how long they continued to pay rent at New Horizon Apartments other than it continued until "October," as no year is provided along with the month.

MHA employees or set forth the relief requested.[5]

In addition to the joint allegations, Plaintiff Freeman and Plaintiff Hunter have filed portions of the Amended Complaint that they have each individually signed, which contain similar allegations to the joint allegations. Plaintiff Freeman alleges that MHA "[w]orks for" the United States Department of Housing and Urban Development ("HUD") and, thus, cannot have "different" rules and regulations. Plaintiff Freeman also makes various allegations against MHA employees acting in their official capacities. Plaintiff Freeman alleges that Defendant Sullivan failed to allow him to apply for housing with Plaintiff Hunter, delayed processing his Section 8 portability paperwork for "five months," and failed to install grab bars in his apartment bathroom upon request. Plaintiff Freeman alleges that Defendant Fisher delayed the portability paperwork for five months and failed to permit "reasonable modifications to a dwelling." Plaintiff Freeman alleges that Defendant Lipscomb refused to allow Plaintiff Freeman to live with Plaintiff Hunter, that he needed to live with Plaintiff Hunter to help him move around due to his scoliosis, that Defendant Lipscomb delayed Plaintiff Freeman's portability paperwork for five months in 2006 and for six months in 2009[6], and that Defendant Lipscomb failed to make a "reasonable accommodation." Plaintiff Freeman's individually signed portions of the Amended Complaint do not cite any legal bases for his claims against MHA or the

MHA employees and do not set forth the relief requested.

In her individually signed portion of the Amended Complaint, Plaintiff Hunter alleges that MHA violated Section 804 "[o]r F" and "804F3B" of Title VII of the Civil Rights Act as amended by the Fair Housing Act of 1988 and Section 504 of the Rehabilitation Act of 1973. Plaintiff Hunter also makes various allegations against MHA employees acting in their official capacities. Plaintiff Hunter alleges that Defendant Sullivan laughed after asking whether she and Plaintiff Freeman were getting married, that Defendant Sullivan did not allow Plaintiff Hunter to initial portions of Plaintiff Freeman's housing application as part of his household, that Defendant Sullivan required that Plaintiff Freeman "draw a line" across the portions signed of his application signed by Plaintiff Hunter and initial each change, and that Defendant Sullivan "humiliated" her. Plaintiff Hunter alleges that Defendant Fisher also reviewed the MHA policy and advised that Plaintiff Hunter could not be added to Plaintiff Freeman's housing application because they were not married, that Defendant Fisher drew a line through the portions of Plaintiff Freeman's housing application that Plaintiff Hunter signed, and that Defendant Fisher joked, laughed, and "humiliated" her. Plaintiff Hunter alleges that Defendant Lipscomb intentionally delayed the housing paperwork, which forced them to pay full rent for five months. Plaintiff Hunter alleges that it only took one month in Minnesota for the

---

**5.** Other portions of the Amended Complaint against other Defendants reference violations of Sections 804 of Title VIII of the Civil Rights Act "as amended by the Fair Housing Act of 1988," Section 504 of the 1973 Rehabilitation Act, MHA "rules and regulations," U.S. Housing and Urban Development "rules and regulations," and the "H.U.D. Housing Act."

**6.** This is the sole reference in any portion of the Amended Complaint to difficulties in 2009. The Amended Complaint does not contain any factual information regarding this alleged delay.

Housing and Urban Development office to begin "paying their portion of the rent." Plaintiff Hunter's individually signed portions of the Amended Complaint does cite legal bases for her claims against MHA but not for her claims against MHA employees in their official capacities. Plaintiff Hunter's individually signed portions of the Amended Complaint also do not set forth the relief requested.

Plaintiffs additionally have added individual exhibits to the Amended Complaint. Plaintiff Freeman has provided a Notice of Change in Payment from the Social Security Administrate dated November 27, 2011 stating that he will begin receiving $698.00 per month in January, 2012. Plaintiff Freeman also attached a Tenant Rent Allocation Notice from Dakota County Community Development Agency in Eagan, Minnesota, dated November 22, 2011, showing that Plaintiff Freeman and Plaintiff Hunter are both "[a]ssisted household members," that the "contract rent" was $690.00, that the "tenant rental portion" was $387.00, and that the "CDA assisted portion" was $303.00. Plaintiff Hunter also attached a Notice of Change in Payment from the Social Security Administration dated November 27, 2011 stating that she will begin receiving $530.00 per month in January, 2012.

On April 10, 2013, MHA filed the instant Motion to Dismiss, arguing that the claims against it should be dismissed for the following reasons: (1) Plaintiff Freeman's signed portion of the Amended Complaint is void of an indication of the law for which he brings his claims as well as an indication of what relief he seeks from MHA; (2) Plaintiff Hunter's signed portion of the Amended Complaint should be dismissed in its entirety as she has no standing to invoke this Court's subject matter jurisdiction; (3) Plaintiff Hunter's signed portion of the Amended Complaint should be dismissed because she fails to state a claim for which relief may be granted against MHA.

On April 19, 2013, Plaintiffs filed a Response to MHA's Motion to Dismiss. Plaintiffs continue to argue that they were discriminated "because of a handicap" when MHA required them to be married to cohabitate. In support of Plaintiffs' Response, they filed the following documents: (1) Pages 8–11 of a document that purports to be from the record in *Freeman v. Memphis Housing Authority*, Case 04–07–0190–8, with handwritten underlinings and markings; (2) portions of a document entitled "HUD HOUSING PROGRAMS: TENANTS' RIGHTS," including a section entitled, "REJECTING APPLICANTS BASED UPON STATUS OR FAMILIAL COMPOSITION," with handwritten underlinings and markings; and, (3) a document entitled "Appendix 14G" from the Housing and Development Reporter discussing physical and mental impairment and the general prohibitions against discrimination because of handicap.

## II. Proposed Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for lack of subject-matter jurisdiction. Fed.R.Civ.P. 12(b)(1). A Rule 12(b)(1) motion that attacks jurisdiction based upon the face of the pleading requires that the court accept the nonmoving party's allegation of facts as true. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir.2004). A Rule 12(b)(1) motion that challenges the factual basis of the court's jurisdiction requires the party asserting jurisdiction bears the burden of establishing it. *Id.* The Court must be satisfied that the jurisdictional and standing requirements are met before addressing the substance of Plaintiff's claims on the mer-

its. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R.Civ.P. 12(b)(6). In addressing a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 361 (6th Cir.2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting Fed.R.Civ.P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests.'" *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

Nonetheless, a complaint must contain sufficient facts "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 678–79, 129 S.Ct. 1937.

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94, 127 S.Ct. 2197 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir.1996) (citing *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir.1991)). The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir.1989) A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell,* 414 Fed. Appx. 784, 786 (6th Cir.2011) (quoting *Ashcroft,* 556 U.S. at 678, 129 S.Ct. 1937) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford,* 542 U.S. 225, 231, 124 S.Ct. 2441, 159 L.Ed.2d 338 (2004). District Courts are also not "required to create" a pro se litigant's claim for him. *Payne v. Secretary of Treasury,* 73 Fed. Appx. 836, 837 (6th Cir.2003).

## III. Proposed Conclusions of Law

### A. *Standing of Plaintiff Hunter*

MHA asserts that Plaintiff Hunter does not have standing to bring the instant claims because she has not asserted any violation of her legal rights but instead

seeks to vindicate Plaintiff Freeman's legal rights. MHA argues that Plaintiff Hunter's claims must be dismissed as a matter of law pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. As standing is a "threshold question in every federal case," *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Court will address this issue as to Plaintiff Hunter at the outset.

The requirement of standing limits federal court jurisdiction to actual cases and controversies so that the judicial process is not transformed into "a vehicle for the vindication of the value interests of concerned bystanders." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). To satisfy the standing requirement of Article III of the United States Constitution, "a plaintiff must have suffered some actual or threatened injury due to the alleged conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coal Operators and Assoc., Inc. v. Babbitt*, 291 F.3d 912 (6th Cir.2002) (citing *Valley Forge,* 454 U.S. at 473, 102 S.Ct. 752). Thus, "the 'irreducible minimum' constitutional requirements for standing are proof of injury in fact, causation, and redressability." *Id.* A plaintiff bears the burden of demonstrating standing and must plead its components with specificity. *Id.*

In the instant case, Plaintiff Hunter's Complaint alleges two grievances: (1) the denial of Plaintiff Freeman's housing application; and (2) her humiliation during the process of applying for Plaintiff Freeman's government-subsidized housing. With respect to the denial of Plaintiff Freeman's

housing application, Plaintiff Hunter has not plead any injury in fact that she has suffered. Specifically, Plaintiff Hunter has not alleged that she has been denied any of her rights to government-subsidized housing. In fact, the Amended Complaint does not contain any reference to Plaintiff Hunter's attempts to secure her own government-subsidized housing. Instead, Plaintiff Hunter alleges that Plaintiff Freeman's application has been denied and that, as such, she cannot live with him in his government-subsidized housing. Yet this is not sufficient to plead with specificity that she has suffered any violation of her rights pursuant to any law, and absent such pleading; Plaintiff Hunter cannot demonstrate that the denial of Plaintiff Freeman's housing application constitutes an injury in fact as to her. The Supreme Court has made clear that Plaintiff Freeman cannot attempt to vindicate her value interest in Plaintiff Freeman's housing in federal court as a concerned bystander.

With respect to Plaintiff Hunter's alleged humiliation, Plaintiff Hunter has not plead any legal violation that she has suffered due to the MHA employees' alleged rudeness or disrespect towards her in the consideration of Plaintiff Freeman's housing application. An allegation of humiliation is insufficient to provide Defendants with fair notice of the basis of her claim. Thus, Plaintiff Hunter has failed to plead with specificity how this alleged conduct by MHA or its employees rises to the level of a injury in fact sufficient to establish standing.

Accordingly, the Magistrate Judge recommends that the District Court conclude that Plaintiff Hunter's claims have failed to meet the threshold requirement of standing and that Plaintiff Hunter's claims against MHA be dismissed as a matter of law.

### B. Plaintiff Freeman's Claims

Next, Defendants assert that Plaintiff Freeman's allegations fail to state a claim upon which relief may be granted and must be dismissed as a matter of law pursuant to Rule 12(b)(6). Plaintiff Freeman's claims are as follows: (1) that MHA has different rules and regulations from HUD; (2) that his government-subsidized housing application was denied on an illegal basis because he sought to live with his girlfriend, Plaintiff Hunter; (3) that his housing portability paperwork was delayed as part of a conspiracy with New Horizon Apartments, which caused him to pay inflated rent; and, (4) that he was denied the installation of "grab bars" at his New Horizons Apartments to assist him with his scoliosis.

Defendants correctly argue that Plaintiff Freeman has failed to cite the legal basis for any of these allegations against MHA. As the Court has already stated, while pro se litigants are entitled to a liberal construction of their pleadings, it is not the Court's obligation to either speculate about the nature of the claims asserted or create a litigant's claims for him. From this perspective, the Court will briefly address each of Plaintiff Freeman's claims.

As to Plaintiff Freeman's claims that MHA must have the same rules and regulations as HUD and that MHA does not, Plaintiff Freeman has failed to cite any authority supporting this proposition. As to Plaintiff Freeman's claim that he was denied government-subsidized housing with his girlfriend, Plaintiff Hunter, the exhibit of purported HUD Regulations to Plaintiff's Response cites various cases regarding the obligations of a public housing authority to comply with federal and state law in their eligibility determinations. Certain cases discuss whether a public housing authority's definition of family excluding unmarried parents of children is permissible and determine that this criteria is not appropriate. *See Hann v. Housing Authority of City of Easton,* 709 F.Supp. 605 (1989) (considering the legality of a public housing authority's eligibility determination under the United States Housing Act of 1937 ("USHA"), as amended, 42 U.S.C. § 1437f, and the regulations promulgated by HUD to effectuate the Act); *Worcester Housing Authority v. Massachusetts Comm'n Against Discrimination,* 406 Mass. 244, 547 N.E.2d 43 (1989) (considering the legality of a public housing authority's eligibility determination under Massachusetts state law). However, Plaintiff Freeman's exhibit does not cite any authority that a public housing authority may not prohibit two adults *without children* from sharing one applicant's public housing.[78]

As to Plaintiff Freeman's claim that his paperwork was delayed for various periods, this allegation appears to be inconsistent with Plaintiff Freeman's claim that, at

---

**7.** Plaintiff Freeman's allegations that the Dakota County Community Development Agency in Eagan, Minnesota allowed he and Plaintiff Hunter to cohabitate is not relevant to the issue before the Court. Plaintiff has cited no authority that, simply because this agency considers them to be eligible, that MHA is required to make the same eligibility determination.

**8.** Plaintiff Freeman's Complaint also references the effects of the denial of his government-subsidized housing on him due to his disabilities, including his "slow learner disability." However, Plaintiff Freeman's Amended Complaint does not allege any facts supporting his claim that his application was actually *denied* on the basis of his disabilities; instead, Plaintiff Freeman's Amended Complaint makes clear that he was informed that the denial was based upon his desire to cohabitate with his girlfriend but alleges that the denial impacted him more severely due to his disabilities.

his initial meeting at MHA on September 7, 2006, Defendant Sullivan and Defendant Fisher informed him that his application was denied because he sought to apply with his girlfriend, Plaintiff Hunter. Further, Plaintiff Freeman alleges that MHA asked him to sign a document stating that he understood that he was waiving his right to government-subsidized housing because he insisted upon living with Plaintiff Hunter. While Plaintiff Freeman's Amended Complaint does not state whether Plaintiff signed this document or not, there are no further allegations in the Amended Complaint that Plaintiff Freeman actually applied to live on his own in public housing. Thus, as his request to cohabitate was denied and no request to live on his own is alleged to have been made, Plaintiff Freeman has failed to allege what supposed delays violated his legal rights.[9]

 Finally, Plaintiff Freeman argues that he requested that grab bars be installed in his apartment at New Horizon Apartments and that the denial of this request violated the law. However, the Amended Complaint does not allege that Defendants Lipscomb, Sullivan, or Fisher or any other named Defendant had any authority over that decision. Instead, as Plaintiff Freeman alleges, his request for government-subsidized housing was denied on or about September 7, 2006. Thus, Plaintiff Freeman was a tenant at New Horizon Apartments, who is not a party to the instant case.

Accordingly, the Magistrate Judge recommends to the District Court that Plaintiff Freeman's claim against MHA should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## IV. Conclusion

For the reasons set forth herein, the Magistrate Judge recommends that Plaintiff Hunter's claims against MHA be dismissed as a matter of law because Plaintiff Hunter lacks standing. The Magistrate Judge recommends that Plaintiff Freeman's claims against MHA be dismissed as a matter of law for failure to state a claim upon which relief may be granted. Ultimately, the Magistrate Judge recommends that MHA's Motion to Dismiss (D.E. # 43) be GRANTED.

---

**9.** With respect to the alleged delay from August 22, 2006 when Plaintiffs arrived in Memphis until September 7, 2006 when Plaintiffs were given an appointment with MHA, Plaintiffs have also not alleged how this delay could constitute a violation of the law.